JOHN SHEPHERD *v.* STATE OF MISSISSIPPI.

[42 South. Rep., 544.]

1. CRIMINAL LAW AND PROCEDURE. *Grand Jury. Impaneling.*

A grand jury selected and empaneled in violation of the statutes of the state is improperly chosen and, if seasonable objection be made, an indictment returned by it will be quashed, although the jury laws are directory merely.

2. SAME. *Code* 1892, § 2371, *amended Laws* 1896, *ch. 84, p. 93.*

Where the statute (Code 1892, § 2371, as amended Laws 1896, ch. 84, p. 93) directs that a grand jury shall be selected by chance from the names of persons summoned on the *venire facias* by a person other than the judge of the court, it is erroneous for the judge himself to make the selection ignoring the matter of chance.

FROM the circuit court of Amite county.

HON. MOYSE H. WILKINSON, Judge.

Shepherd, the appellant, was indicted and tried for and convicted of the murder of one Terrell, sentenced to the penitentiary for life, and appealed to the supreme court. The assignment of error upon which the case was decided was predicated of the action of the trial judge in selecting the grand jury which found the indictment upon which appellant was tried and convicted. The facts are fully stated in the opinion of the court.

*J. H. Price,* for appellant.

At the very threshold of this prosecution the state meets an insurmountable barrier, which must result in the reversal of the case. Before the grand jury which found the indictment was impaneled, the defendant in open court interposed his objection to the novel methods of the trial judge in selecting the grand jury. In organizing the grand jury, the judge drew their names from a hat, selecting those names which suited him, until he had selected an entire grand jury. This action is condemned by the text-books and by our own court's construction of existing statutes. *Posey* v. *State,* 86 Miss., 141. Since the legislature of 1857, the impaneling of a grand jury is conclusive evidence of competency and regularity, but the statute passed by that legislature and contained in subsequent codes, does not cure the error here. In the case above referred to, this court sustained the lower court, and as reason therefor, stated that had objection been preferred at the proper time, and in proper manner been overruled, such ruling would, as to any one prejudiced thereby, have become reversible error. We ask, was objection taken, in the case at bar, at the proper time? The answer is, that the objection was made before the grand jury was impaneled. Was the objection made in proper manner? The answer is, it was taken in open court, before the grand jury was impaneled, as shown by special bill of exceptions. Section 2371 of the Code of 1892, as amended by Acts 1896, p. 95, sets out the exact method

of how a grand jury should be drawn. "There shall be drawn out by a person designated by the judge, the number directed by the court, and said names shall be drawn from each box in regular order until the number designated is drawn, and the jurors whose names are so drawn shall constitute the grand jury, and be impaneled and sworn as such."

It was not in the purview of the statute for the judge to arrange the names on the slips with face up, exposing the names thereon. Nor was it contemplated that the judge would select out of each hat names to serve on the grand jury. Nor was it in contemplation of the statute that the judge should then, after having the names thus before him, select only such names as he desired for grand jurors. Nor was it in contemplation of the lawmakers that the judge should select at all. The action of the judge in thus placing the names in the hat, arranging the slips so as to select those which he wanted, and ignoring those which he did not want, was grave error, and not to be cured by sec. 2375 of the Code of 1892, inasmuch as the objection was made by appellant before the impaneling of the grand jury. It is not necessary that there was fraud, or that damage resulted from the irregularity. The matter goes to the foundation of trial by jury. See *Dixon* v. *State,* 74 Miss., 271, holding that if there were no registration books in the county to guide the board of supervisors in selecting jurors, their action in making a jury list was irregular, and upon objection before impaneling of the grand jury, the panel must be quashed. See, also, *Purvis* v. *State,* 71 Miss., 706, where the court said that a motion to quash a special venire was properly sustained, where in making up a jury list the board of supervisors disregarded sec. 2358 of the Code of 1892, on the question of selecting a list of names for jury service from the different districts of the county. This latter case was a mere irregularity on the part of the board, but the objection was timely made and properly taken by the district attorney.

*R. V. Fletcher,* assistant attorney-general, for the state.

The most important question raised by appellant's assignment of error relates to the manner in which the grand jury was organized.    It appears that the circuit judge personally drew from the jury box twenty names to constitute the grand jury.    The slips were arranged in five separate compartments, as required by law, and contained no names except those drawn on the regular jury list, as provided by statute.    The only irregularity complained of is that the circuit judge did not leave the selection of the grand jury entirely to chance, but that he looked at the names on the slips, and selected such as did suit him, and left such as did not suit him in the box to comprise the petit juries.    It is not contended that good men were not placed on the grand jury, nor that injustice was done to the prisoner, nor that the grand jury, as thus drawn, was not fair and impartial.

It is worthy of note that the Act of 1896, chapter 84, section 4, dealing with the impaneling of grand juries, does not say that the person drawing the jury shall trust to chance alone.    Nothing is said about not examining the names on the slips.    In other words, the action of the trial judge is not positively prohibited by statute.    No express letter of the law has been violated.    There is no reason inherent in the nature of the jury system why the selection of juries should be determined by lot.    It is a matter absolutely within the control of the legislature, and that body may at its discretion provide any plan for selecting a grand jury.    *Box* v. *State,* 34 Miss., 614.    Since the statute, then, by its terms, does not prohibit the trial judge from inspecting the slips before selecting the names, it would seem that the law has been complied with.

All jury laws are directory, and informalities and irregularities in drawing, summoning, and impaneling juries do not affect the legality of the jury.    Code 1892, § 2389.    Commenting on this section, this court has said: "It is the duty of the court to superintend the selection of the jury, in order that it

may be composed of fit persons; large discretion must be con-
fided to the court in the performance of this duty; nor will the
action of the circuit court in this behalf be subject to review
here, unless some violation of law is involved, or a gross and
injurious exercise of discretion is shown.   The primary object
is to secure a fair, unbiased jury."   *Head* v. *State,* 44 Miss.,
731; *Gilliam* v. *Brown,* 43 Miss., 641.   See, also, *Buchanan* v.
*State,* 84 Miss., 332, holding that an irregularity in the drawing
of the special venire will not invalidate a verdict, if a fair and
impartial jury has been obtained.

In the case at bar no individual grand juror was challenged
on account of prejudice, bias, or want of qualification.   The
objection was merely to the way the grand jury was selected.   In
the case of *Posey* v. *State,* 86 Miss., 141, it was said that it is
the privilege of the defendant, at the time the grand jury is being
impaneled, to tender his personal challenge to each individual so
selected, or he has the right, at any time, where the facts warrant,
to prefer a challenge to the array for fraud.   This would appear
to be the extent of the defendant's rights.   In other words, he
has no right to complain of an irregularly impaneled grand jury,
composed of persons fully qualified in other respects for jury
service, drawn from the list in the jury box, unless he can show
that his case will thereby be prejudiced, and some harm possibly
come to him.

In *West* v. *State,* 80 Miss., 710, the jury box was exhausted,
and the sheriff was directed to summon a venire.   It was held
not error for the sheriff to take the registration books and assess-
ment rolls of the county from which to select the venire.   As
tending to show that fraud alone is sufficient to cause the dis-
missal of jurors, see *Campbell* v. *State,* 17 South. Rep., 441,
construing and applying section 2387 of the code of 1892, which
section provides that there shall be no challenge to the array
except for fraud.   See, also, 1 Bishop's Crim. Prac., 875, and
cases there cited.

The whole tenor of these authorities, and numerous others not here cited, is that if a fair and impartial grand jury has been selected, and if it appears that the defendant has in no wise been injured, any irregularities in the drawing, summoning, or impaneling of the grand jury will be unavailing. 10 Ency. Pl. & Pr., 362, *et seq.; Wilcox* v. *State,* 104 N. C., 847. In *Mitchell* v. *Com.,* 33 Grattan (Va.), 845, it was held that where a special venire has been quashed, it was no ground for error that the judge directed the sheriff to re-summon the identical persons who were on the quashed venire. In *Eason* v. *State,* 65 Tenn., 431, the court approved the practice of having the trial judge designate the persons to be selected as jurors, instead of leaving the selection to the sheriff. And in *Workman* v. *State,* 4 Sneed (Tenn.), 425, the court held that when only enough persons appeared to constitute a grand jury, the failure to draw the jury from the box was a useless formality, and did not invalidate the indictment. To practically the same effect is *State* v. *Standley,* 76 Iowa, 215.

Since it is not pretended that the grand jury was not fair and impartial, and since there was no challenge to the array for fraud, and no challenge of the individual members, the wrong done to the defendant was *damnum absque injuria;* and he has no just ground for complaint on the ground assigned.

MAYES, J., delivered the opinion of the court.

There are many assignments of error in the record, but we only deem it necessary to notice that assignment of error which brings into review the action of the circuit judge in the selection of the grand jury, as shown by the special bill of exceptions taken at the time and before the grand jury was impaneled and sworn, since by it the legal existence of the grand jury which found the indictment against appellant itself is challenged. The special bill of exceptions shows that the regular August term of the circuit court of Amite county was convened according to law, and that appellant was confined at the time in the jail of

Amite county on a charge of murder. When the court convened on the first day of the term, and the presiding judge undertook to organize the grand jury for the term, he placed all the names composing the *venire facias* from each supervisor's district in the county in separate hats, as the law required; but he arranged the slips in the hats with the face up, so that all the names on the slips could be seen and read by him, and after this was done the judge proceeded to select out of each of said hats five names, aggregating twenty names in all, for the purpose of constituting the grand jury. In selecting the names in the manner stated above, the judge selected only the names of such persons as he desired to place on the grand jury; the judge knowing the name on each slip before he picked it up, and ignoring the names of persons on the slips whom he did not want on the grand jury. The appellant, being represented by counsel, objected at the time, in open court, before the grand jury was impaneled and sworn, and tendered a special bill of exceptions to the court embodying the above facts, which was signed by the judge and is a part of the record. The grand jury, so organized, indicted appellant for murder, and he was placed on trial and convicted, and given a life sentence in the penitentiary.

Let it be emphasized that the special bill of exceptions, signed by the judge, shows that he arranged the slips in the hats with the face up, so that he could see and read the names before he selected a person to serve as grand juror, and that he ignored the names of such persons in the hats as he did not desire to place on the grand jury, and that the judge himself, and not some person designated by him, proceeded to draw out the names for the purpose of constituting the grand jury, and that all this was excepted to at the time. Code 1892, § 2371, as amended by sec. 4, ch. 84, p, 95, of the Laws of 1896, is as follows:

"*Grand jurors, how drawn.*—The number of grand jurors shall not be less than fifteen, nor more than twenty, in the discretion of the court, and they shall be drawn from the list of

persons in attendance as jurors in the following manner: The name of each juror shall be written on a slip of paper, and the names from each supervisor's district shall be placed in a separate box, hat, or compartment in open court, and there shall be drawn out by a person designated by the judge, the number directed by the court; and said names shall be drawn from each box in regular order until the number designated is drawn, and the jurors whose names are so drawn shall constitute the grand jury and be impaneled and sworn as such."

When this legislative method, directing how the grand jury shall be drawn, is compared with the acts of the judge, it is plainly to be seen that it has been violated. Some method had to be adopted by the legislature for the drawing and selecting of a grand jury, and the method adopted by them is the only method by which a grand jury may be legally organized. No discretion is vested in the judge as to whether he will follow the law laid down by the legislature for drawing grand jurors, or adopt another plan for the selection which may be more in accord with his individual ideas. It was manifestly the purpose of the legislature, as indicated by the act referred to above, to have the grand jury selected by chance out of the names of those summoned on the *venire facias,* and to have them selected by a person other than the judge of the court, because the act provides that they "shall be drawn out by a person designated by the judge." The legislature must be intended to mean what they have said. The plan adopted by them, as was said by Chief Justice SHARKEY in the case of *McQuillen* v. *State,* 8 Smed. & M., 597, in speaking of the improper organization of the grand jury: "The restrictions and requisites have been imposed for wise purposes. They are guards thrown around the liberty of the citizens. They constitute an important part of the right of trial by jury." As was also said in that case, so we say in this, that a grand jury does not, by our law, consist of fifteen or more men, not exceeding twenty, congregated by the selection of the

judge of such persons from the *venire facias* as suit him, but they must be selected according to the forms of the law, and if the law be not followed, it is an incompetent grand jury, and an indictment returned by them is void.    The action of the judge was a manifest violation of the statute in regard to the manner of drawing the grand jury, and, if his action can be justified, a grand jury may be selected in any manner that a judge might choose, and all the law on the subject of juries be swept aside. There is no law authorizing the judge to select the grand jury in the manner that he did, but there is a law directing the selection of the grand jury in a different way.    If he can change the method in one way, he can change it for all, and the effect would be to break down all the law on the subject.    *McQuillen* v. *State*, 8 Smed. & M., 597; *Rawls* v. *State*, 8 Smed. & M., 609; *Stokes, et al.,* v. *State,* 24 Miss., 624.

The legislature has very wisely designated the manner of selecting juries and grand juries, and the law on this subject must be followed.    As was said in the case of *Finley* v. *State,* 61 Ala., 207: "The exercise of such a power by the court would be in violation of the spirit of all our legislation, and would convert the grand jury from a distinct, independent body, drawn and summoned by officers specially charged with that duty, into a mere dependency of the court, chosen by its absolute will.    The practical results of such a power are too apparent to require discussion or statement.    There is no reason for imputing to the court in this instance more than mere error; but the power exercised, in the hands of a capricious or unscrupulous judge, would destroy the purity and independence of the grand jury, and pervert it from all the purposes of its institution."    We quote the language used in above case with approval in this case. While we know that the learned judge in the court below acted from the highest and best motives, yet we are laying down a rule of law for the control of the lofty and the low, and, when the plain requirements of a statute have been violated by a

judge in the organization of his court, we are bound to look to the law, and not to the motive, in determining the legality of his acts.

The *Posey case* in 86 Miss., 141 (38 South. Rep., 324), has no application to this case. In the *Posey case*, after impaneling the grand jury, certain members having been excused by the court, the court directed that bystanders, designating them, serve as grand jurors, such persons not being among those listed by the supervisors for jury service, and their names not being on the venire drawn for service during the term; but no exception was taken at the time, and no direct challenge was made. In the case under discussion the defendant did object to the manner in which the grand jury was drawn at the time and before impanelment of same. Section 2375 of the annotated code of 1892 provides that "after the grand jury shall have been sworn and impaneled, no objection shall be raised, by plea or otherwise, to the grand jury; but the impaneling of the grand jury shall be conclusive evidence of its competency and qualifications; but any party interested may challenge or except to the array for fraud." The action of the circuit judge is not cured by this section of the code, for the reason that objection was made before the impaneling of the jury, even if it be conceded that this section would in any event have made valid the action of the judge in drawing the jury as he did.

*Let the cause be reversed, the indictment dismissed, and the prisoner held to await the action of a proper grand jury.*