WADE v. STATE.

(Division A. April 13, 1936.)

[167 So. 617. No. 31910.]

**Joe H. Ford**, of Houston, and **Creekmore, Creekmore & Capers**, of Jackson, for appellant.

**W. D. Conn, Jr.,** Assistant Attorney General; for the state.

**McGowen, J.,** delivered the opinion of the court.

The appellant, Wade, was tried and convicted in the circuit court of Calhoun county on an indictment charg-

ing him with the larceny of two mules owned by Oscar Sturdivant, and was sentenced to serve a term of five years in the state penitentiary.

The substantial facts are these: Sturdivant had two mules which disappeared on the night of April 11, 1934. He saw them just at dusk. The mules were valued at one hundred dollars each. The appellant, E. O. Wade, brought them back to Sturdivant about three weeks later. Over the objection of appellant, Sturdivant testified that he went to the Union Stockyards at Meridian, examined their books, and found that on April 12, 1934, the appellant sold four mules, and that the description of two of them tallied with the description of his stolen mules exactly.

It was shown that Wade had a Chevrolet six dual wheel truck, built to carry live stock, and that Kimbrell usually drove the truck, and that he lived in Wade's home. One witness testified that on the afternoon of April 11th, about dusk, he was four miles from Sturdivant's place, and, according to his best judgment, he saw the Wade truck going north toward Sturdivant's home, but he could not say positively whether or not it was the Wade truck. Another witness testified that he saw a truck loaded with stock, but that he did not know the truck, that it was going north, and that he heard a truck come back that night, and that, according to his best judgment, it was a big truck.

A. C. Chambliss testified that on April 12th he was at the Union Stockyards in Meridian, and that some mules were sold in the ring there in the name of E. O. Wade; that at these yards mules were brought into the sales ring and auctioned off, the highest bidder getting the mules; that Kimbrell had the mules there, and at that time the witness thought he was E. O. Wade, because the mules were handled under Wade's name; that he did not see the defendant there at the stockyards that day.

R. S. Adams, operator of the Union Stockyards at Meridian, testified that on April 13, 1934, he signed all checks given for the payment of stock sold through the yards the day before. He identified a check which was given in settlement for four mules as having been signed by him, the check was made payable to E. O. Wade, and had been indorsed by E. O. Wade. The memoranda showed that a mare had been bought by the party who sold the mules and had been delivered to and carried away by him.

E. A. Enochs, an official of a bank at Vardaman, Mississippi, testified that the stockyard's check for two hundred dollars was indorsed by the defendant and deposited at his bank, and that Wade opened an account with him on that day.

The sheriff of the county testified that, when he went to defendant's home, there was a "nice looking mare" hitched in front of his house, and that defendant took the same mare to the stockyards at Meridian and attempted to get them to take her back.

At the conclusion of the state's evidence there was a motion to exclude it, which motion was overruled by the court.

Two witnesses testified for the defendant that they were at his home with him on the night of April 11th; that Kimbrell was not there and did not come there; that they remained with Wade until two o'clock in the morning; they were playing cards and listening to the radio.

The defense then offered evidence tracing the movements of Kimbrell, the driver of Wade's truck. One witness testified that Kimbrell came to his house about dark on the evening of April 11th, driving an empty truck; that Kimbrell and others went on a fox hunt and came in about eleven o'clock that night and retired; that early the next morning he and Kimbrell started toward Eupora; that they picked up a man named Grubbs, who wanted to go to Meridian to purchase live stock; that, as

they proceeded on the highway toward Eupora, they came upon a negro leading four mules; and that Kimbrell got off the truck and bought the mules from him, paid money for them, and loaded them on the truck. The witness left the truck at Eupora, and Grubbs accompanied Kimbrell to Meridian. Grubbs testified that Kimbrell sold the mules in the ring at Meridian, two of them being the stolen mules of Sturdivant, and purchased a mare from the stockyards, that he collected some money and instructed the manager of the stockyards to forward a check to the appellant for the balance, which was two hundred dollars.

Wade testified that he received the check and deposited it in the bank at Vardaman because his local bank had charged too much exchange on checks. He further testified that Kimbrell had been working for him that winter; Wade's wife and children were in Calhoun City for the purpose of sending the children to school; that he did not pay Kimbrell a regular salary, but allowed him to have the milk money; that Kimbrell brought him two hundred fifteen dollars which had been sent to him by his partner Spencer who had been engaged with Wade for about ten years in the purchase and sale of live stock; that, when Kimbrell delivered the money to him, he returned it to him; that Kimbrell desired a check therefor, but Wade told him he could use the money on the trip to Meridian. He further testified that he did not know that the stockyard check was for the sale of the stolen mules, and that he did not hear of the loss of the mules for about three weeks, and, when the sheriff pressed him about it, he went to Meridian, traced the mules, paid the expenses and carried them back and delivered them to Sturdivant. He testified further that he had no knowledge from any source that the mules had been stolen other than as above detailed. He also stated that he carried the mare, which had been brought to him by Kimbrell, back to Meridian. He also testified that Kimbrell

left his home on April 11th, driving his truck, to go to Meridian; that he was to carry Grubbs with him and spend the night in Webster county with Ross; that Kimbrell returned from Meridian on Thursday night and reported to him that he had bought some stock and sold it.

It will be observed that there was no effort on the part of the state to prove any conversation, conspiracy, or concert of movement between Kimbrell and Wade. The only thing that is proven is that, after the mules had been stolen and sold in Meridian, Wade received the check sent him by the manager of the stockyards, and that he cashed it, placing the proceeds to his credit in a bank. The most critical analysis of this evidence fails to disclose that the accused ever had possession in any manner of the mules which were stolen from Sturdivant.

The contention of the state that recent possession of stolen property by the accused is a circumstance for the jury's consideration, and, in the absence of a reasonable explanation of such possession by the accused the jury may infer guilt therefrom, is without merit. There is no proof of recent possession of the stolen property by the appellant. The cases of Harris v. State, 61 Miss. 304; Cook v. State (Miss.), 28 So. 833; Harper v. State, 71 Miss. 202, 13 So. 882; Wood v. State, 155 Miss. 298, 124 So. 353; and Fletcher v. State, 168 Miss. 361, 151 So. 477, have no application here. Other jurisdictions do not go so far as to adopt the rule which is now settled in this jurisdiction, and we cannot extend that rule beyond its fair intendment.

In a larceny case, there must be proof that the property described in the indictment was stolen, that the property found in the possession of the accused was the stolen property, and that the possession was recently after the larceny. 36 C. J., p. 867, sec. 427. On page 869 of the same section we find the following statement of the rule, which is applicable here: "The limitations are that accused's possession must be proved to have been per-

sonal, conscious, and exclusive, and unexplained by any direct or circumstantial evidence which would rebut the presumption of a taking by accused.''

In this case the burden was on the state to show that the accused in some manner known to the law was in conscious possession of the property alleged to have been stolen. There may be grave suspicion here, but a conviction of larceny may not rest thereon. The appellant was entitled to the peremptory instruction requested.

Reversed, and appellant discharged.