REYNOLDS *v.* STATE.

(In Banc. Feb. 11, 1946.)

[24 So. (2d) 781. No. 36026.]

Earle L. Wingo, of Hattiesburg, for appellant.

Greek L. Rice, Attorney General, by Geo. H. Ethridge, Assistant Attorney General, for appellee.

Argued orally by **Earle L. Wingo**, for appellant, and by **Geo. H. Ethridge**, for appellee.

**L. A. Smith, Sr., J.**, delivered the opinion of the court.

Appellant was indicted and convicted of manslaughter in the Circuit Court of Covington County and given the maximum penalty of twenty years in the state penitentiary. The prosecution was based on Section 2232, Code 1942, the "culpable negligence" statute. On his appeal here he assigns four errors: Failure of the trial court to grant him a directed verdict; overruling his motion to quash the indictment; and the granting to the state of two instructions.

With reference to the first assignment, it is enough to say that in our judgment the trial court was correct in refusing to instruct the jury peremptorily to acquit the defendant, because the testimony is sharply conflicting and the jury could have approved by their verdict the evidence either for the state or for the appellant, and such verdict would have had evidence to support it.

The state offered evidence to show that the deceased, Mr. O. T. Graham, a prominent citizen and president of the Board of Supervisors of Covington County, with his wife, was driving north on Highway 49 about 6 o'clock on Sunday afternoon June 17, 1944, where the highway was straight away. They were driving about 25 or 30 miles an hour and approaching them the appellant, in a Ford coupe, 1934 Model, was driving south somewhat more rapidly while in a drunken condition, crossing and recrossing the center line of the highway, and he drove his car into the side of the car of the deceased, knocked it off the highway into a ditch, threw Mrs. Graham out and inflicted injuries upon Mr. Graham from which he died a few days later in a hospital at Hattiesburg. The evidence offered by the appellant was to the effect that he was not drunk, and it took up his movements from early that morning by several witnesses, until some time after the wreck, when he went to the hospital to see how badly injured were Mr. and Mrs. Graham. Appellant's wtnesses also testified that he was not drunk, all during the day, but there was testimony he was drunk at the hospital. A negro hitch-hiker in the car with him stated that he was not drunk and not going from side to side of the road, but that he was driving "pretty good," to use his language, when the accident occurred. Appellant denied he was drunk or zigzagging across the highway and stated that the reason the accident happened was that his left front wheel came off his car, which drove him into the side of the Graham car, an accident he could not prevent or foresee. On this matter of the wheel witnesses for the state and for the appellant, who came upon the scene shortly after the event, contradict each other. We think this brief summary of the different versions of the events leading to the unfortunate tragedy will suffice for the purpose of this opinion.

Appellant, before the trial in the lower court, but after the grand jury had been impaneled and had returned the indictment in this case into open court, and he had

been arraigned and plead not guilty, filed the following motion: "Now comes the defendant, Earl Reynolds, and respectfully moves the court to quash the indictment rendered against him in the above styled cause, and to quash the two panels of the petit juries summoned to appear at the present week of the present term of the court for the reason that the manner in which the grand jury for the present term of the court was selected was contrary to law and in violation of the statute prescribing the manner by which the said jury list might be drawn. And the defendant tenders at this time testimony in support of this motion."

The testimony offered in support of this motion was that the Judge had not drawn the grand and petit juries during the regular term as prescribed by Section 1772, Code 1942, but had directed the clerks of the circuit and chancery courts and the sheriff to draw them in accordance with Section 1774, Code 1942. Pursuant to this direction the clerks and the sheriff gathered in the office of the circuit clerk at the time prescribed and proceeded, as one of them testified, to select the names by taking the slips out of the jury box and spreading the same face up on a table so they could see the names of the prospective jurors for the approaching term of circuit court. In answer to this question, "How did you make up the list?" the circuit clerk answered, "We would take up a name and say 'Does this name suit the rest of you', and go on through that way in trying to select men who would make good jurors. In my case I tried to suggest men I thought would be able to serve. We would find some who, on account of old age, or being out of the county on some kind of job, or maybe some who were sick or had sickness in their home, maybe some in the service, in order to keep so many from being served who would have to be excused, we would lay their names aside."

It will be remembered that these slips of paper contained the names of jurors placed in the jury box after being selected and procured by the Board of Supervisors

,according to Section 1766, Code 1942. It will be seen that in effect this action by these officers was a purging or revision of the supervisor's list regularly selected and for which action by the officers there is no sanction of law. It has been condemned several times in this state. The procedure followed here was also followed in the case of Cook v. State, 90 Miss. 137, 43 So. 618, 620. The Court there said with reference to the method under discussion, "If this manner of selecting jurors could stand, there is no need for law upon this subject; but the statutes may be repealed, and the sole discretion as to the selecting of fit and competent jurors committed to the sheriff and clerks of the county. It was never intended that the power of determining who was and who was not fit for jury service should be committed to the judgment of those charged with the duty of drawing the jurors from the jury box for service during a term of court. The guarding of the method by which jurors shall be selected has been a subject of great care by the Legislature." In that case the defense of the procedure was made as here, that it was a custom which had long been followed in the court trying the case and that it was for the purpose of obtaining good jurors. However neither usage nor good motive will justify such procedure. The legislature foreclosed any such practice by specifically providing the method of selection. Section 1798, Code 1942, providing that jury laws shall be directory, does not apply to this departure from the prescribed mode of selecting jurors for a term of court. The Cook case, supra, deals with petit juries so drawn.

The case of Shepherd v. State, 89 Miss. 147, 42 So. 544, 10 Ann. Cas. 963, deals with a grand jury similarly drawn from the jury lists by the trial judge. In the Sheppard case the trial judge selected only the names of such parties as he desired to place on the grand jury, the judge knowing the name on each slip before he picked it up and ignoring the names of persons on the slips whom he did not want on the grand jury. "The appellant, being represented by counsel, objected at the time, in open

court, before the grand jury was impaneled and sworn, and tendered a special bill of exceptions to the court embodying the above facts, which was signed by the judge and is a part of the record. The grand jury, so organized, indicted appellant for murder, and he was placed on trial and convicted, and given a life sentence in the penitentiary.'' The case was reversed, the indictment dismissed and the prisoner held to await, the action of a proper grand jury. In the case at bar this motion to quash the indictment was not filed until after the grand jury had been impaneled, for the reason counsel for appellant testified it was unknown to him and his client before the impaneling of the grand jury. This, however, will not avail appellant here because Section 1784, Code 1942, lays down the rule that ''after the grand jurors shall have been sworn and impaneled, no objection shall be raised, by plea or otherwise, to the grand jury; but the impaneling of the grand jury shall be conclusive evidence of its competency and qualifications; but any party interested may challenge or except to the array for fraud.'' This proceeding under review was not a challenge to the array for fraud and appellant did not argue fraud, but challenged the indictment because it was returned by an incompetent grand jury due to the act of the clerks and the sheriff in selecting the jurors. Speaking of the action of the court in the Shepherd case, we quoted from the Supreme Court of Alabama in the case of Finley v. State, 61 Ala. 201, 207, as follows: ''The exercise of such a power by the court, would be in violation of the spirit of all our legislation, and would convert the grand jury from a distinct, independent body, drawn and summoned by officers specially charged with that duty, into a mere dependency of the court, chosen by its absolute will. The practical results of such a power, are too apparent to require discussion or statement. There is no reason for imputing to the court in this instance, more than mere error; but the power exercised, in the hands of a capricious, or an unscrupulous

judge, would destroy the purity and independence of the grand jury, and pervert it from all the purposes of its institution.''

In the Shepherd case timely objection was made. In the case at bar the objection was made too late as the strict language of the statute that the impaneling of the grand jury shall be conclusive evidence of its competence and qualifications permits of no exceptions. Again we state that here was not a challenge to the array for fraud. Therefore, in our judgment, while the grand jury was improperly selected it had been impaneled when the motion to quash its indictment was filed and appellant could not thereafter be permitted to challenge its competency or qualification. So, the trial court was correct in overruling the motion to quash the indictment for the reasons stated. The matter of the petit juries will correct itself on remand, when new jurors will be drawn.

The next assignment of error is that the court erred in granting two instructions to the state. The first of these instructions charged the jury that ''culpable negligence within the meaning of the statute is that degree of negligence or carelessness which is denominated as gross negligence and which constitutes a departure from what would be the conduct of an ordinarily careful and prudent man under the same circumstances as to furnish evidence of indifference to conseqence.'' It is unnecessary to discuss this instruction further than to say we have recently twice condemned it. We did so in the case of Smith v. State, 197 Miss. 802, 20 So. (2d) 701, and Gardner v. State (Miss.), 23 So. (2d) 925. The decision in the Smith case was rendered before this case at bar was tried. We reaffirm our conclusions announced in the two cases cited. For this error in granting the state this instruction, the judgment of the lower court must be reversed and the cause remanded for a new trial.

The second instruction challenged by appellant here was confusing and it was also erroneous because referring to culpable negligence, as to which the court had

committed an error of definition. The questioned instruction contained, among other things, this language: "if they further believe from the evidence beyond a reasonable doubt that the defendant . . . by his culpable negligence ran his automobile to the left across the center line going south, and by so doing, if such were the facts, with great force and violence ran into and upon the automobile in which the deceased Graham was riding and operating, thereby causing a wreck and injury to the said deceased Graham, and as a result of said injury the said deceased Graham died, the defendant is guilty as charged in the indictment and the jury should so find." As stated, since the court's definition of "culpable negligence" was incorrect this second instruction based upon the previous erroneous definition thereof was improper.

In our judgment, therefore, the case must be reversed and remanded for the error in the granting of these two instructions, and it is so ordered.

Reversed and remanded.