LOTT *v.* STATE.

In Banc. Dec. 13, 1948.

(37 So. (2d) 782)

Jesse M. Byrd, Ben Stevens, Jas. H. Stevens, and L. B. Jones, for appellant.

**George H. Ethridge,** Assistant Attorney General, for appellee.

618

Montgomery, J.

T. A. Lott was convicted in the Circuit Court of Greene County on a charge of grand larceny and was sentenced by the court to serve a term of eighteen months in the State Penitentiary and he appeals.

After his indictment but before arraignment Lott moved to quash the entire Jury list, from which the Grand and Petit Juries had been chosen or were to be chosen for the alleged reason that the Board of Supervisors had not selected the names of said jurors in the manner required by law in that the statutes governing the selection of qualified electors as jurors, the placing of their respective names in the jury box, and the subsequent drawing of the juries were alleged not to have been complied with. There was, however, no charge of fraud.

The appellant is precluded from challenging the competency and qualifications of the Grand Jury by the terms of Section 1784, Code of 1942, which reads as follows: .

"Before swearing any grand juror as such, he shall be examined by the court, on oath, touching his qualifications; and, after the grand jurors shall have been sworn and impaneled, no objection shall be raised, by plea or otherwise, to the grand jury; but the impaneling of the grand jury shall be conclusive evidence of its compe-

tency and qualifications; but any party interested may challenge or except to the array for fraud.''

In construing this section of the Code, this Court, in Reynolds v. State, 199 Miss. 409, 24 So. (2d) 781, 783, said:

''Therefore, in our judgment, while the grand jury was improperly selected it had been impaneled when the motion to quash its indictment was filed and appellant could not thereafter be permitted to challenge its competency or qualification.''

██ ██ So, here, the motion to quash, in so far as it concerns the grand jury, was made too late as the strict langauge of the statute that the impaneling of the Grand Jury shall be conclusive evidence of its competence and qualifications admits of no exceptions.

The motion to quash, insofar as it concerned the petit jury was timely made, as was held in Gavigan v. State, 55 Miss. 533.

Section 1766, Code of 1942, in its pertinent part, reads as follows:

''The board of supervisors at the April meeting in each year, or at a subsequent meeting if not done at the April meeting, shall select and make a list of persons to serve as jurors in the circuit court for the twelve months beginning more than thirty days afterwards, and as a guide in making the list they shall use the registration book of voters, and shall select and list the names of qualified persons of good intelligence, sound judgment, and fair character, and shall take them as nearly as they conveniently can, from the several supervisor's districts in proportion to the number of qualified persons in each, excluding all who have served on the regular panel within two years, if there be not a deficiency of jurors. The clerk of the circuit court shall put the names from each supervisor's district in a separate box or compartment, kept for the purpose, which shall be locked and kept closed and sealed, except when juries are drawn, when the names shall be drawn from each box in

regular order until a sufficient number is drawn. The board of supervisors shall cause the jury box to be emptied of all named therein, and the same to be refilled from the jury list as made by them at said meeting. If the jury box shall at any time be so exhausted of names as that a jury cannot be drawn as provided by law, then the board of supervisors may at any regular meeting make a new list of jurors in the manner provided.

"In order that the board of supervisors may properly perform the duties required of it by this section, it is hereby made the duty of the circuit clerk of the county and the registrar of the voters to certify to the board of supervisors during the month of March of each year under the seal of his office the number of qualified electors in each of the several supervisor's districts in the county."

Section 1772, Code of 1942, in providing the manner in which petit jurors shall be drawn, says:

"At each regular term of the circuit court, and at a special term if necessary, the judge shall draw, in open court, from the five small boxes enclosed in the jury box, slips containing the names of sixty-two jurors to serve as grand and petit jurors for the first week and thirty-six to serve as petit jurors for each subsequent week of the next succeeding term of the court drawing the same number of slips from each and every one of the five small boxes if practicable, and he shall make and carefully preserve separate lists of the names, and shall not disclose the name of any juror so drawn; but only thirty-six names shall be drawn for each week or any term where a grand jury is not to be drawn. The slips containing the names so drawn shall be placed by the judge in envelopes, a separate one for each week, and he shall securely seal and deliver them to the clerk of the court, so marked as to indicate which contains the names of the jurors for the first and each subsequent week. If in drawing it appears that any juror drawn has died, removed or ceased to be qualified or liable to serve as a juror, the

judge shall cause the slip containing the name to be destroyed, the name to be stricken from the jury list, and he shall draw another name to complete the required number.''

The petit juries were not drawn under this section but appear to have been drawn under Section 1774, Code of 1942, which is as follows:

''Whenever the jurors have not been drawn by the judge in open court, he may draw them in vacation, if convenient; and if he do not, and whenever jurors are required for a special term and the judge shall so direct, the clerks of the circuit and chancery courts and the sheriff shall, at the time they should have opened the envelopes, draw the jurors for the term of court, and make and certify lists thereof; and the clerk shall issue and deliver to the sheriff the proper venire facias.''

The principal objections urged by appellant in support of this motion are (1) that the Circuit Clerk did not, during the month of March, certify to the Board of Supervisors, under the seal of his office, the number of qualified electors in each of the several supervisor's districts in the Count; (2) there was no order entered on the minutes of the Board of Supervisors adjudicating that the names of the qualified electors were placed in the respective boxes in proportion to the number of qualified electors in each district; (3) there was no order entered on the minutes of the Board of Supervisors adjudicating that the names of the qualified electors were placed in the respective boxes in proportion to the number of qualified electors in each district; (4) there was no adjudication on the Board of Supervisors' minutes to show that they excluded all persons who had served on the regular panels within two years; (5) nothing to adjudicate that the Board caused the jury box to be completely emptied before placing the new lists in them; (6) nothing to adjudicate that the Board did anything to ascertain that each person whose name was placed in

the jury box was a qualified elector of good intelligence, sound judgment and fair character.

The Circuit Clerk, over the objection of appellant, and we think properly so, was permitted by the Court to testify that at the April meeting of the Board of Supervisors he certified the number of qualified electors in each of the several supervisors' districts and that, though no certificate was filed with the clerk of the board, the certificate was handed to each member of the board while the board was in session in the Board of Supervisors' room.

The Chancery Clerk testified that the Board of Supervisors at is April meeting selected the list of jurors and the order containing the list of names was entered on the minutes of the board.

The Circuit Clerk testified that the Chancery Clerk certified said list of selected jurors to him and he filed it in his office; that the names were placed in the jury box according to the respective districts in which they lived; that the juries for the term were drawn by the Circuit Clerk in the presence of the Sheriff and the Chancery Clerk, of the county, and were sealed up in the proper manner; that the petit jury list contained only the names of the jurors drawn out of the jury box by the Circuit Clerk in the presence of the Sheriff and Chancery Clerk; that the seal on the jury box had not been broken or tampered with when the Circuit Clerk, Chancery Clerk and Sheriff drew the juries for the term; and that all names were in the proper boxes, according to the districts in which they resided and from which they had been selected by the Board and had not become mixed in improper boxes.

It is urged by appellant that a halt should be called on the loose manner in which the Clerks and the Boards of Supervisors draw and select the jurors and compile the jury lists. It is the duty of the Circuit and Chancery Clerks and of the Board of Supervisors and also it is the duty of the sheriff to comply strictly with all of the re-

quirements of the statutes. But here, on this appeal, we must confine our consideration to the validity of this particular petit jury list in the light of the manner in which the jurors were selected by the board and drawn by the Circuit Clerk in the presence of the Sheriff and the Chancery Clerk.

Section 1798, Code of 1942, reads as follows:

"All the provisions of law in relation to the listing, drawing, summoning and impaneling juries are directory merely; and a jury listed, drawn, summoned or impaneled, though in an informal or irregular manner, shall be deemed a legal jury after it shall have been impaneled and sworn; and shall have the power to perform all the duties devolving on the jury."

In Buchanan v. State, 84 Miss. 332, 36 So. 388, 389, this Court speaking through Judge Truly said:

"Very many assignments of error are presented to the Court. Some of them do not appear in the record. Others are in reference to the action of the court in drawing the special venire. As it is firmly fixed that the laws in this regard are simply directory, and as it is not contended that he was not tried by a fair and impartial jury, we cannot see that any harm was done the appellant."

In Cook v. State, 90 Miss. 137, 43 So. 618, 621, speaking through Judge Mayes, the Court said:

"We desire to say that in the history of this court there has never been a record brought to the court disclosing a more flagrant violation of the law with reference to the selection of jurors than is presented in this case. We feel it to be the duty of the court to make this comment in the light of this record, to the end that such practice and such method may be put an end too. It is evident from the record that the officers charged under the law with the duty of selecting the jury to serve during the term of this court, intended no wrong, but the practice indulged in by them, if sanctioned, would destroy the sanctity of a jury trial and make the administration of the laws under the jury system farcial. The Constitu-

tion declares 'that the right of trial by jury shall remain inviolate,' and the Legislature has undertaken to carry out this declaration of the Constitution by guarding the manner of the selection of the jury in every way possible, to the end that a fair and impartial jury may be secured, and their selection not be intrusted to a single individual, or individuals.

"But in this case the defendant has suffered no prejudice because of the illegal way in which this jury was selected, and therefore this case should not be reversed."

In Ferguson v. State, 107 Miss. 559, 65 So. 584, 585, the Court, speaking through Chief Justice Sydney Smith said:

"Moreover, since there is no evidence that appellant was not tried by a fair and impartial jury, error cannot be predicated of an irregularity in the drawing or impaneling thereof, since the statutes on the subject are declared, by section 2718 of the Code of 1906, to be directory merely. Buchanan v. State, 84 Miss. 332, 36 So. 388."

 Under the facts in this case we find nothing to cause us to feel that the jury in the court was not fair and impartial. The laws respecting the listing, drawing, summoning and impaneling juries are directory and unless there is a radical departure from the statutory scheme of selecting and impaneling the jury this Court will not reverse. We do not feel there has been such a departure here and the lower court was correct in overruling the motion to quash.

It is next assigned as error that the court below erred in granting the State the following instruction:

"The Court instructs the jury for the State that the possession of property recently stolen is a circumstance which may be considered by the jury and from which, in the absence of a reasonable explanation, the jury may infer guilt of larceny."

It is true that in Wade v. State, 175 Miss. 434, 167 So. 617, where this instruction is given, that there must be

proof (1) that the property was stolen; (2) that the property found in the possession of the accused was the stolen property; (3) that the possession was recently after the larceny and (4) that the accused's possession was personal, conscious, exclusive, and unexplained by any direct or circumstantial evidence which would rebut the presumption of a taking by accused.

Here, all of the foregoing elements are found in the proof. V. E. Cooper, the owner of the cattle, died before the trial, but his son Billy Cooper testified that his father had never sold the cattle and that he had fed them on the range all winter. Sheriff Green testified that he found the cattle at Richton, on the same day they had been sold by the appellant in an auction sale there on March 8, 1943. The appellant told Sheriff J. F. Green that he had bought the cattle on "the Thursday before the Monday of the 8th in Alabama" from his brother-in-law, Kermit Blankenship. On March 12th appellant signed a written confession stating that on March 3rd, 1948, he put the cattle in question in the Calvin McLeod barn and fed them until the following Monday, March 8th, 1948, when he and one W. T. McLeod loaded them up on a pick-up truck and carried them to Richton and sold them to Mr. Critz; that after the sheriff located the cattle, he refunded Critz his money and, at the sheriff's direction, carried the cattle to Leakesville, where the brand was identified by Mr. V. E. Cooper, and thereupon he carried the cattle to Mr. Cooper's barn and there left them. Kermit Blankenship denied selling the cattle to Lott. Lott's claim of purchase of the cattle from Blankenship, repudiated as it is by Blankenship, leaves the possession of the cattle unexplained and would justify the jury in finding that his possession of the cattle was obtained by larceny. The appellant's alleged claim is inconsistent with anything but guilt and the jury having so found we can find no error in the giving of the instruction by the court.

 It is next urged that the court erred in refusing appellant the following instruction:

"That the defendant is presumed to be innocent of the offense with which he is charged, until proven guilty beyond every reasonable doubt, and to a moral certainty; and you as jurors are not to consider the fact that an indictment has been returned against him as any evidence of his guilt, but you are to consider him at the beginning and throughout his trial as innocent of the charge until proven against him beyond every reasonable doubt, and to a moral certainty; and this presumption of innocence is no idle pretense, but is a witness declaring for the defendant in thunderour tones that he is innocent, and should go with you into the jury room and be with you during your entire deliberations, calling upon you that the defendant is innocent of the charge against him until proven guilty beyond every reasonable doubt and to a moral certainty; and if there is in your minds a reasonable doubt of the defendant's guilt or innocence after considering all of the evidence, then it is your sworn duty to return a verdict of, 'We the jury find the defendant Not Guilty.' "

This instruction has been heretofore condemned by this Court in Carr v. State, 192 Miss. 152, 4 So. (2d) 887, and the Court did not err in refusing it.

 It is next urged that the lower court erred in refusing appellant the following instruction:

"That if there is any material fact or circumstances proven by the evidence in this case upon which the jury can place a reasonable construction favorable either to the State or the defendant, it is the duty of the jury to accept that construction favorable to the defendant, although the one favorable to the State is more reasonable."

This instruction has been heretofore condemned by this Court in Runnels v. State, 96 Miss. 92, 50 So. 499, and the Court was eminently correct in refusing it.

There are other assignments of error. We have carefully considered each of them and we do not find sufficient merit in any of them to justify any discussion in this opinion.

We are convinced that the appellant had a fair and impartial trial in the court below, free from reversible error and that the judgment of the lower court should be affirmed.

Affirmed.