222 So.2d 145 (1969)
Burl Thomas ROUSE
v.
STATE of Mississippi.
No. 45059.
Supreme Court of Mississippi.
February 17, 1969.
Rehearing Denied May 12, 1969.
*146 H. Bernard Gautier, Pascagoula, for appellant.
Joe T. Patterson, Atty. Gen., by Guy N. Rogers, Asst. Atty. Gen., and Laurence Y. Mellen, Special Asst. Atty. Gen., Jackson, for appellee.
ROBERTSON, Justice:
The appellant, Burl Thomas Rouse, was indicted, tried, and convicted of the July 11, 1967, murder of his 14-year-old stepdaughter, Kathleen Simmons, in the Circuit Court of Jackson County. Inasmuch as the jury found the defendant guilty as charged, he was sentenced to death.
*147 Since the questions raised in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (June 3, 1968), were raised by the appellant both in his assignment of errors and in his brief in support thereof, we directed the trial court to hold an evidentiary hearing and determine all issues of fact made pertinent by Witherspoon. The record of this hearing was filed in this Court on December 30, 1968, along with the order of the court finding that three jurors were excused for cause because they had conscientious scruples against the imposition of the death penalty.
About 5 p.m., July 11, 1967, 14-year-old Kathleen Simmons was found in the den of the home of her stepfather, Burl Rouse, with two penetrating stab wounds, one in her chest and one in her back, which wounds were made by a butcher knife. She had bled profusely but was still conscious and begging for help. Her mother, Margaret Simmons Rouse, was lying across the bed in the bedroom, dead from multiple stab wounds. Burl Rouse was lying on the floor of the living room with both wrists slashed and a cigarette still burning in his hand at the time police arrived. The murder weapon, a butcher knife, was found stuck in a chest of drawers located in the living room near the door to the dining room. Blood was everywhere: on the floors, on some walls and doors, and even in some chairs.
The appellant's principal assignments of error were:
(1) Adverse newspaper publicity influenced the grand jury in indicting appellant and affected the appellant's ability to get a fair trial.
(2) The defendant was deprived of a fairly representative jury because the method of selection caused a grossly disproportionate number of names from rural Districts 1 and 5 to be included on the special venire and regular venire.
(3) The trial court erred in allowing Dr. Wigham to testify as to statements made to him by Kathleen Simmons, since they were not dying declarations.
(4) The State failed to prove beyond a reasonable doubt that the appellant was sane.
(5) The trial court erred in allowing the State to challenge for cause jurors who expressed conscientious scruples against imposing the death penalty.
The adverse newspaper articles complained of were published for the most part in July and August 1967. The appellant was first indicted at the October 1967 term of court; but these two indictments, one for the murder of his stepdaughter and one for the murder of his wife, were quashed by the court on January 9, 1968.
Appellant was again indicted at the January 1968 term of court. On January 11, the date set for trial, appellant again moved: to quash the indictment, for a change of venue, and to quash the special and regular venires.
After six witnesses had testified that the appellant could get a fair and impartial trial in Jackson County, the court overruled: the motion to quash the indictment, the motion to quash the special and regular venires, and the motion for a change of venue.
In overruling these motions, the court said:
"In my opinion there was relative ease in acquiring this jury, there was only one person of the special venire who definitely said he had definitely made up his mind as to the facts involving this case. All of the men expressed the opinion when questioned, I might say, exhaustively by defense counsel concerning the opinions, that they did not have fixed opinions, their minds were not made up, that they would listen to the evidence, and in my opinion the motions which have heretofore been filed, should be ruled on accordingly. * * *"
*148 We think the trial court's rulings were correct and supported by the evidence.
Appellant contends that the special and regular venires included a grossly disproportionate number of names from rural Districts 1 and 5 of the county, and thereby defendant was deprived of a fairly representative jury.
The circuit clerk testified that the names of all qualified and registered voters in each supervisor's district were placed in the box for that district, that names were then drawn in rotation from each of the five boxes. A venire of 50 jurors would be composed of 10 names from each box. Appellant in his brief admits, "The method appears to be basically in accord with the statutory provisions. §§ 1762, 1762-01, 1762-02, 1762-03, 1766, and 1772 Miss. Code 1942 Ann. (Supp. 1966)."
We reason out this matter and reach the same conclusions as did this Court in Lott v. State, 204 Miss. 610, 37 So.2d 782 (1948):
"Under the facts in this case we find nothing to cause us to feel that the jury in the court was not fair and impartial. The laws respecting the listing, drawing, summoning and impaneling juries are directory and unless there is a radical departure from the statutory scheme of selecting and impaneling the jury this Court will not reverse. We do not feel there has been such a departure here and the lower court was correct in overruling the motion to quash." Id. at 625, 37 So.2d at 786.
In answering the contention of the appellant that the statements of Kathleen Simmons to Dr. Wigham were not dying declarations because she was not in imminent fear of death, we would only say, as did the trial judge, that taking into consideration the age of Kathleen Simmons, the pain she had suffered, the severity of her wounds (two penetrating wounds, one of which went completely through her little body), the fact that she was in shock, and was internally bleeding to death, she undoubtedly was in imminent fear of death, and her statements were dying declarations. We note that she died while undergoing surgery, about two hours and fifteen minutes after admission to the hospital. Dr. Wigham testified that her liver was extensively cut and her wounds fatal from the outset.
We said in Fulton v. State, 209 Miss. 565, 47 So.2d 883 (1950):
"It is well settled that the sense of impending death which a dying person must have had in order to render a dying declaration made by him admissible in evidence may be inferred from the nature of the wound or the state of his illness, without any express declaration to show that he was sensible of impending death. * * *" Id. at 569, 47 So.2d at 885. (Emphasis added).
The traditional practice is to leave these questions to the sound discretion of the trial judge. We certainly cannot say that the trial judge abused his discretion in admitting the testimony of Dr. Wigham as to statements made by Kathleen Simmons approximately an hour before her death.
The next contention of the appellant is that the State failed to prove beyond a reasonable doubt that the defendant was sane. Suffice it to say that this question was properly submitted to the jury on disputed facts.
After six weeks of examinations at Whitfield, it was the unanimous decision of the staff (sixteen doctors) of the Mississippi State Hospital that Burl Rouse was sane and a responsible individual.
Dr. James E. Stary, chief of the Psychologist Service, and Dr. Glen Anderson, staff psychiatrist, two doctors on the staff of the State Hospital who personally examined and treated appellant, testified that Rouse was sane and knew the difference between right and wrong. Dr. Frederick *149 J. Minkler, Jr., who sutured appellant's cut writs and who had had special training in psychology, testified that Rouse was sane and knew the difference between right and wrong.
The jury was amply justified in finding appellant sane and responsible for his acts.
We find that the verdict of the jury, "guilty as charged," is supported by the overwhelming weight of the testimony and that the judgment as to guilt should be affirmed.
The trial judge reported to this Court:
"In compliance with the decision of the Mississippi Supreme Court dated the 3rd day of October, 1968, this court has held a hearing in compliance with said decision and is of the opinion and doth find that certain jurors were excused because they stated to the Court on voir dire examination that they had conscientious scruples against the infliction of the death penalty. Said jurors were Otman R. Mallette, Frank L. Maples, and Robert E. Heinrich.
"The undersigned judge was the presiding judge at the trial of the herein named defendant and did excuse the above named jurors for cause and for the reason stated by them that they had conscientious scruples against the infliction of the death penalty. In the judgment of this court this does bring said case within the Witherspoon decision."
We reverse the order of the trial court sentencing the appellant to death and remand for a new trial as to punishment only. Witherspoon v. Illinois, supra; Yates v. Breazeale, Supt. of Miss. State Penitentiary, 402 F.2d 113 (5th Cir.1968); and Irving v. Breazeale, Supt. of Miss. State Penitentiary, 400 F.2d 231 (5th Cir.1968).
There is an alternative open to the court which would obviate the impaneling of a new jury to pass upon the punishment to be imposed. If the district attorney and the trial judge agree, then the trial judge could sentence the appellant to life imprisonment without the intervention of a jury.
In Bullock v. Harpole, Supt. State Penitentiary, 233 Miss. 486, 102 So.2d 687 (1958), this Court had this to say about the trial court's following such a procedure:
"Wharton says that `The plea of guilty has the same effect in respect to the subsequent proceedings thereon against the accused as a verdict of guilty; and if it is unqualified he may be sentenced to any degree of punishment imposed by law for the offense alleged in the indictment.' Wharton's Criminal Law and Procedure, Vol. 4, p. 769, par. 1901.
"The general rule governing the right of the court to pronounce sentence after the accused has entered a plea of guilty, is stated in 24 C.J.S. Criminal Law § 1563a, p. 23, as follows:

"`In the absence of a contrary statute, where accused enters a plea of guilty or of nolo contendere, it is the right and duty of the court to pronounce sentence as on a verdict, and ordinarily no evidence or independent adjudication of guilt is required; but as a condition for pronouncing sentence the court should know the facts on which the plea is based, and be satisfied that it was properly entered.' In some jurisdictions the statutes expressly require that, on a plea of guilty, in certain offenses, the court shall empanel a jury to determine the degree of the offense of which the accused is guilty. 24 C.J.S. Criminal Law § 1563b(2), page 27; and cases cited. We have no such statute.

* * * * * *
"Neither of the statutes mentioned above, however, expressly requires that a jury be empaneled on a plea of guilty for the purpose of fixing the punishment *150 at life imprisonment, if the trial judge sees fit to accept the plea of guilty with the understanding that the milder sentence shall be imposed. A jury in this case could have fixed no lighter punishment than that which the court imposed. The appellant could have gained nothing by having the court go through the formality of empaneling a jury for the purpose of obtaining the jury's approval of the sentence of life imprisonment, and no prejudice resulted from the failure of the trial judge to empanel a jury to fix the punishment. We think that no constitutional right of the appellant was violated when the court pronounced the sentence without empaneling a jury to fix the punishment." Id. at 493-495, 102 So.2d at 689-690. (Emphasis added).
We express no opinion as to which of the two procedures outlined above should be followed in this case; the decision is up to the district attorney and the trial judge. We only point out the alternatives open to the trial court.
Affirmed as to guilt, but reversed and remanded for a new trial as to punishment only.
All Justices concur.
GILLESPIE, Presiding Justice:

ON PETITION FOR REHEARING
The principal argument on the petition for rehearing is that the action of the Court in ordering a retrial on the question of penalty alone is contrary to the clear intent of the statutes. Appellant contends that he should either be given a life sentence or a new trial on the issue of guilt as well as that of penalty.
There is no constitutional inhibition against severing the issues of guilt and punishment. This is implicit in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968); Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); and Irving v. Breazeale, 400 F.2d 231 (5th Cir.1968).
Every murder case involves two basic issues, guilt and punishment. The applicable statutes are Mississippi Code 1942 Annotated Section 2217 and 2536 (1956) which are as follows:
Section 2217. Every person who shall be convicted of murder shall suffer death, unless the jury rendering the verdict shall fix the punishment at imprisonment in the penitentiary for the life of the convict; or unless the jury shall certify its disagreement as to the punishment as provided by section 1293 [Code of 1930; § 2536, Code of 1942] in which case the court shall fix the punishment at imprisonment for life.
Section 2536. In any case in which the penalty prescribed by law upon the conviction of the accused is death, except in cases otherwise provided, the jury finding a verdict of guilty may fix the punishment at imprisonment for the natural life of the party; and thereupon the court shall sentence him accordingly; but if the jury shall not thus prescribe the punishment, the court shall sentence the party found guilty to suffer death, unless the jury by its verdict certify that it was unable to agree upon the punishment, in which case the court shall sentence the accused to imprisonment in the penitentiary for life.
The statutes make no provision for the determination of the penalty when the accused enters a plea of guilty, or in a situation arising under Witherspoon where there is no other error requiring reversal as to the issue of guilt.
The question is whether it is lawful for a jury other than the one finding the verdict of guilt to determine whether the punishment in a murder case shall be death or life imprisonment. In a dictum this Court said in Dickerson v. State, 202 Miss. 804, 32 So.2d 881 (1947) that a jury could assess punishment where guilt was *151 determined by a plea of guilty. In Yates v. State, 251 Miss. 376, 169 So.2d 792 (1964) and in the second appeal Yates v. State, 253 Miss. 424, 175 So.2d 617 (1965) this Court approved the practice of submitting the issue of punishment to a jury after acceptance of a plea of guilty. These cases and Irving v. Breazeale, supra, make it clear that guilt and punishment are severable even though the statutes provide for "the jury rendering the verdict" to fix the punishment. We are of the opinion that the words "the jury rendering the verdict" contained in the statutes concerning imposition of the death penalty were not intended to require the same jury that determined guilt to fix the punishment where the accused pleads guilty or he successfully raises the Witherspoon rule.
When this Court reached the Yates cases, it applied Sections 2217 and 2536 to the situation where the accused entered a plea of guilty. It would be impossible for "the jury rendering the verdict" as to guilt to determine the question of punishment where the plea of guilty is accepted. The statute does not say that the same jury that rendered the verdict of guilty shall also determine the question of punishment.
When Sections 2217 and 2536 were enacted the legislature could not have contemplated what the procedure should be in a case punishable by death or life imprisonment when the jury rendering the verdict of guilty was unconstitutionally drawn as to punishment but not as to guilt. It is necessary, therefore, that this Court apply the problems arising under Witherspoon to the practice established by the statutes and the former decisions of this Court. Since the appellant's guilt in this case has been lawfully determined and only the question of punishment remains, it is unnecessary to relitigate the question of guilt. The accused is not entitled to another trial on the issue of guilt and it would serve no purpose.
In Ellison v. State, 432 S.W.2d 955 (Tex. Cr.App. 1968) the Court reached a result contrary to what we here decide. The Texas statute provides "the punishment shall be assessed by the same jury." Vernon's Texas Statute Annotated, Art. 37.07 (Supp. 1968-69). We have no such provision in our statute. In the recent case of Massey v. Smith, 224 Ga. 721, 164 S.E.2d 786 (1968) the Court affirmed the verdict and judgment of conviction for rape and under the authority of Witherspoon reversed with the direction that the trial court empanel a jury for the submistion to it of the sole question of punishment. The Georgia statutes are substantially the same as our Sections 2217 and 2536.
There is no reason why a hearing to fix punishment alone should present procedural difficulties. Yates v. State, supra.
We are therefore of the opinion that the petition for rehearing should be and it is denied.
Petition for rehearing denied.
ETHRIDGE, C.J., and INZER, SMITH and ROBERTSON, JJ., concur.
PATTERSON, Justice (dissenting):
With deference to the opinion expressed by the majority of this Court I find myself obliged to dissent. This opinion will be succinct as it is apparent that the decision in this cause will be of significant import only during the period of transition brought about by Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed. 776 (1968). Indeed, it is hoped that once the impact of that decision is fully absorbed by the trial judges of this state, these problems will not arise again.
The United States Supreme Court held in Witherspoon that veniremen may not be excluded from a jury simply because they express scruples against the death penalty. The proper basis for exclusion was held to be whether an individual could render a just verdict in spite of his opposition to capital punishment. The Court stated, *152 however, that since the issues of guilt and punishment are separate entities, only the latter is tainted where it is concluded that a jury has been improperly impaneled. Therefore, a reversal under Witherspoon serves only to invalidate the sentence imposed by the improper jury and has no effect on its verdict as to guilt. See Irving v. Breazeale, 400 F.2d 231 (1968).
The result is that this Court is now faced with the burden of devising a practical method for retrying a case within the framework of our existing criminal statutes where reversal has been necessary under the directives of Witherspoon. The majority of this Court has chosen to accomplish this task in the present cause by reversing the appellant's conviction as to punishment with a remand for a new trial as to that issue only. As I understand the appropriate statutes, such action is not proper, and the cause should be remanded for a new trial as to guilt also.
Mississippi Code 1942 Annotated section 2217 (1956), reads as follows:
Every person who shall be convicted of murder shall suffer death, unless the jury rendering the verdict shall fix the punishment at imprisonment in the penitentiary for the life of the convict; or unless the jury shall certify its disagreement as to the punishment as provided by section 1293 [Code of 1930; § 2536, Code of 1942] in which case the court shall fix the punishment as imprisonment for life. (Emphasis added).
Section 2536 provides:
In any case in which the penalty prescribed by law upon the conviction of the accused is death, except in cases otherwise provided, the jury finding a verdict of guilty may fix the punishment at imprisonment for the natural life of the party; and thereupon the court shall sentence him accordingly; but if the jury shall not thus prescribe the punishment, the court shall sentence the party found guilty to suffer death, unless the jury by its verdict certify that it was unable to agree upon the punishment, in which case the court shall sentence the accused to imprisonment in the penitentiary for life. (Emphasis added).
These sections make it evident that in capital cases the jury which renders the verdict as to guilt must also be the one which determines what sentence will be imposed. In making this statement I am mindful of our holdings in Yates v. State, 253 Miss. 424, 175 So.2d 617 (1965), and Dickerson v. State, 202 Miss. 804, 32 So.2d 881 (1947), wherein we ruled that it was proper for a jury to be impaneled to determine the sole issue of punishment after a defendant had entered a plea of guilty. We have also held it proper for the issue of punishment to be submitted to the court when a defendant has pled guilty. See Bullock v. Harpole, 233 Miss. 486, 102 So.2d 687 (1958). Yates v. Breazeale, 402 F.2d 113 (5 Cir.1968). These cases are readily distinguishable from that at bar as it is apparent that one who enters a plea of guilty has absolutely waived his right to a trial by jury on the issue of guilt[*], and logically, I think, has also waived his right to demand a jury trial on the issue of punishment. In such situation it is impossible to adhere literally to the terms of Sections 2217 and 2536, supra, as the plea of guilty has removed "the jury rendering the verdict" and "the jury finding a verdict of guilty," leaving only the issue of the punishment to be determined.
The problem involved here is much greater as the defendant has entered a plea of not guilty and therefore, has not waived his right to trial by jury and is entitled to every benefit which the law provides. The Supreme Court of Texas held in Ellison v. Texas, 432 S.W.2d 955 (Tex.Cr.App. 1968), under a similar statute that these circumstances require a full reversal so that *153 guilt and punishment may be determined by the same jury. Georgia has held to the contrary in the case of Massey v. Smith, 224 Ga. 721, 164 S.E.2d 786 (Ga. 1968).
It is my opinion that the procedure adopted by the Texas court is much more desirable in this instance as it does not force the court to render an opinion that is the equivalent of judicial legislation. By adopting the Texas rule we would assure that all of the defendant's rights under Witherspoon were fully protected without modifying or abridging any of the provisions of our own criminal statutes. In addition, such action would enable the court to avoid questions of appropriate procedure which may arise during a retrial as to penalty only. As the United States Supreme Court stated in United States v. Jackson, 390 U.S. 570, 579-580, 88 S.Ct. 1209, 1215, 20 L.Ed.2d 138, 145-146 (1968):
* * * [I]t would hardly be the province of the courts to fashion a remedy. Any attempt to do so would be fraught with the gravest difficulties: If a special jury were convened to recommend a sentence, how would the penalty hearing proceed? What would each side be required to show? What standard of proof would govern? To what extent would conventional rules of evidence be abrogated? What privileges would the accused enjoy? * * *
It is one thing to fill a minor gap in a statute  to extrapolate from its general design details that were inadvertently omitted. It is quite another thing to create from whole cloth a complex and completely novel procedure and to thrust it upon unwilling defendants for the sole purpose of rescuing a statute from a charge of unconstitutionality. * * *
In view of these thoughts and the circumstances, it is my opinion that the proper course of action in this cause would be a complete reversal with remand for a new trial on both guilt and punishment.
RODGERS, JONES and BRADY, JJ., join in this dissent.
NOTES
[*] A plea of guilty does not preclude the trial judge from rejecting the plea and putting the case to trial on its full merits. See Dickerson, supra.