JOHN HENRY DIXON *v.* STATE.

1. CONSTITUTION OF 1890.   *Jury laws enacted thereunder.*   *Code* 1892, § 2358.
    The constitution of 1890, and the jury laws enacted thereunder, are
        not obnoxious to the fourteenth amendment to the constitution of
        the United States because of discrimination on account of race,
        color or previous condition of servitude.   *Gibson* v. *Mississippi*,
        162 U. S. Repts., 565.

2. SAME.   *Ratification.   Representation in congress.*
    The constitution of 1890 is not invalid because it was not submitted
        to and ratified by a vote of the people.   Nor is it rendered inop-
        erative because the state's representation in congress has not been
        reduced since its adoption.   *Sproule* v. *Fredericks*, 69 Miss., 898.

3. SAME.   *Construction.   Limitations thereon.*
    This court, in construing the constitution of 1890, must look alone to
        the perfected work of the convention.   It has no power to investi-

Syllabus.

gate the private individual purposes of the members of that body, and cannot consider their racial complexion.

4. SAME. *Sections* 241, 242, *and* 244.

Sections 241, 242, and 244 of the constitution of 1890 are not in violation of the fourteenth amendment of the constitution of the United States upon the idea that they discriminate, or that they vest in administrative officers the power to discriminate, against citizens by reason of race, color or previous condition of servitude.

5. SAME. *Jurors. Payment of taxes.*

While it is essential, under the constitution of 1890, that a juror shall be a qualified elector, yet it is unnecessary that he shall have produced satisfactory evidence of the payment of taxes to the officers holding an election; such payment may be proved before the court.

6. CRIMINAL LAW. *Removal to United States court. Negroes.*

If in the constitution or statutes of a state discrimination is made against negroes on account of race, color or previous condition of servitude, and they are by force thereof excluded from serving on juries, a defendant, whose race is so discriminated against, can remove a criminal prosecution against him to a court of the United States; but if the complaint is that by acts of officers of the state, charged with the administration of impartial laws, discrimination has been made against his race, the defendant must make defense in the state courts, and appeal, if need be, from the final judgment of the highest court of the state to the supreme court of the United States.

7. SAME. *Quo animo of defendant's acts.*

Upon trial of an indictment for murder, it being shown that defendant shot at one person and killed another, the state may introduce evidence to prove defendant's hostile feelings towards the person against whom the shot was aimed.

8. SAME. *Grand jury. Objections. Code* 1892, § 2375.

Code 1892, § 2375, requires that objections to the qualifications of grand jurors must be made, if at all, before they are impaneled, and they cannot be raised afterwards.

FROM the circuit court of Washington county.
HON. R. W. WILLIAMSON, Judge.

The defendant was indicted for the murder of Nancy Miner. He moved the court below for an order removing the case to the United States court, which motion was overruled. Defendant also made a motion to quash the indictment, and this motion was denied. The facts upon which these motions were based are stated in the opinion of the court. Upon the trial, it appeared in evidence that defendant shot at another person, and killed Nancy Miner, whom, it is claimed, he did not see. The state, over defendant's objection, introduced evidence showing that defendant entertained hostile feelings towards the person at whom his shot was aimed. Defendant was convicted, and sentenced to the penitentiary for life. He appealed from the conviction and sentence.

*C. J. Jones*, for appellant.

*Wiley N. Nash*, *Attorney-general*, for the state.

The petition for removal was properly denied. The action of the court was justified by the decision of the supreme court of the United States in *Neal* v. *Delaware*, 103 U. S., 370. This case is an authority in point. The cases of *Gibson* v. *State*, MS. op., and *Charley Smith* v. *State*, MS. op., decided by this court, sustain the action of the court below. The case of Smith was appealed to the United States supreme court and affirmed, and is reported in 162 U. S., 592. The case of Gibson was also appealed and also affirmed. 162 U. S., 592. Neither of these cases are reported in our reports. In the Smith case Mr. Justice Harlan, in rendering the opinion of the court, holding the petition for removal was properly denied, states: "Neither the constitution nor the laws of Mississippi, by their language, reasonably interpreted, or as interpreted by the highest courts of the state, show that the accused was denied, or could not enforce in the judicial tribunals of the state, or in the part of the state where such suit or prosecution was pending, any right secured to him by

any law providing for the equal civil rights of citizens of the United States.''

In the Gibson case the justice, in denying the application for removal, or rather passing upon this point, says: '' But they do not support the application for the removal of this cause from the state court in which the indictment was found, for the reason that neither the constitution of Mississippi nor the statutes of the state prescribe any rule for or mode of procedure in the trial of criminal causes which is not equally applicable to all citizens of the United States and to all persons within the jurisdiction of the state, without regard to race or previous condition of servitude.''   *Gibson* v. *State*, 162 U. S., 582.   On the same page will be found this language: '' But when the constitution and laws of a state, as interpreted by its highest tribunals, do not stand in the way of the enforcement of rights secured equally to all citizens of the United States, the possibility that during the trial of any particular case the state court may not respect and enforce the right to the equal protection of the laws constitutes no ground, under the statute, for removing the prosecution into circuit court of the United States in advance of the trial.''

As to the action of the court below in not allowing the removal, there is no error, according to both the decision of this court in the cases above referred to, when before it, as well as the action of the supreme court of the United States, where both cases were affirmed on writ of error.

It will readily occur to the court, upon a review of the subject in the light of recent authorities, that the motion to quash could not have been sustained on reason or authority.   The United States supreme court, in the Gibson case, before cited, states: ''The conduct of a criminal trial in a state court cannot be reviewed in this court unless the trial is had under some statute repugnant to the constitution of the United States, or was so conducted as to deprive the accused of some right or immunity secured to him by that instrument.   Mere error in

administering the criminal law of a state, or in the conduct of a criminal trial, no federal right being invaded or denied, is beyond the revisory power of this court, under the statutes regulating its jurisdiction." Citing *Andrews* v. *Swarts*, 156 U. S., 272, 276; *Bergeman* v. *Backer*, 157 U. S., 655, 659. Indeed, it would not be competent for congress to confer such power on this or any other court of the United States. *Gibson* v. *Mississippi*, 162 U. S., 591.

The whole effort of the appellant in the case at bar is to make a parol allegation of the purpose and intent for which the people of Mississippi assembled to amend her constitution and her laws, and then again by further parol testimony to establish the intent with which such constitution and laws were passed, changed or amended. Such an effort, such an attempt, is unprecedented in legislative or judicial history in this or any other civilized country, and such an idea will not be entertained for a moment.

There are no provisions in the constitution of Mississippi, there are no laws passed pursuant to this constitution, which, *per se*, deprive the colored citizen of any right, civil or political, which are enjoyed by any other citizen, race, color or class. The same constitutional provisions, the same laws, apply to each and every inhabitant within our state. Every citizen of the state, whether of the Caucasian, Mongolian, African or other race, if he can qualify under general laws, has the privilege of the elective franchise, the right to hold office, serve on grand or petit juries. Every colored man in the state is eligible to all these rights and privileges, as much so as any other citizen in the state.

In the case of *Strauder* v. *West Virginia*, 100 U. S., p. 303, the law complained of there expressly stated that "all white male persons, who are twenty-one years of age, and who are citizens of this state, shall be liable to serve as jurors, except as herein provided." In Mississippi we have no such law as this, discriminating against race or color. In the West Vir-

ginia law, all persons of a certain race were excluded from serving on juries, solely on account of color, so that by no possibility could a colored man sit upon a jury. No such contention can be made as to the case at bar. Our constitution and our laws refuse such a proposition. There is no provision in the constitution of this state, no law on the statute book, that *per se* can be said to be directed by way of discriminating against negroes, or any other people or race, as a race, or class as a class.

Cooper, C. J., delivered the opinion of the court.

The appellant has been indicted, convicted, and sentenced to imprisonment for life for the murder of one Nancy Miner. In the court below the defendant made a motion to quash the indictment, and when the motion was overruled he moved for a transfer of the cause from the state to the federal court. This motion was also denied. The action of the court in refusing to quash the indictment, and in denying the petition for a transfer of the cause, constitute the principal errors assigned. The motion and the petition set out, in effect, the same facts, and affidavits of several persons were filed that the matters therein stated were, as affiants believed, true. The purpose of the motion seems to have been primarily to assail the validity of all the laws passed since the adoption of our recent constitution, and of that constitution itself, on the ground that said constitution and laws are obnoxious to the fourteenth amendment to the constitution of the United States. The motion is too long to be inserted in this opinion. It states some facts, many inferences and deductions, and an argument to show that the conditions resulting from the adoption of the constitution are incompatible with the rights guaranteed to the colored race by the fourteenth amendment. Compressed within reasonable limits, the substance of the motion is that the constitutional convention was composed of 134 members, of which 133 were whites and one only a negro; that the purpose and object of

said constitution was to disqualify, by reason of their color, race, and previous condition of servitude, 190,000 negro voters; that the constitution was not submitted to a vote of the people, and that the representation of the state in congress has not been reduced, as it should have been, upon the disqualification of so great a number of voters; that sections 241, 242, and 244 of the constitution of this state are in conflict with the fourteenth amendment to the constitution of the United States, because they vest in administrative officers the power to discriminate against citizens by reason of their color; and, that the purpose of so investing such officers with such power was intended by the framers of the state constitution, to the end that it should be used to discriminate against the negroes of the state.

We will recur to the contents of the motion hereafter, for the purpose of considering such averments as seem more nearly related to the subject under investigation, viz., the competency and legality of the grand jury by which the indictment against appellant was returned.    At this point in the investigation it is sufficient to say that we have no power to investigate or decide upon the private, individual purposes of those who framed the constitution, the political or racial complexion of the body of the convention, and have no concern with the representation of the state in congress.    We can deal only with the perfected work—the written constitution adopted and put in operation by the convention.    We have heretofore decided that it was competent for the convention to put the constitution in operation without submitting it for ratification by a vote of the people.    *Sproule* v. *Fredericks*, 69 Miss., 898.

We find nothing in the constitutional provisions challenged by the appellant which discriminates against any citizen by reason of his race, color or previous condition of servitude.    Section 241 declares who are qualified electors, sec. 242 makes it the duty of the legislature to provide for the registration of persons entitled to vote, and sec. 244 declares that " on and after the first day of January, A.D. 1892, every elector shall,

in addition to the foregoing qualification, be able to read any section of the constitution of this state; or he shall be able to understand the same when read to him, or give a reasonable interpretation thereof. A new registration shall be made before the next ensuing election after January the first, A.D. 1892.'' All these provisions, if fairly and impartially administered, apply with equal force to the individual white and negro citizen. It may be, and unquestionably is, true that, so administered, their operation will be to exclude from the exercise of the elective franchise a greater proportionate number of colored than of white persons. But this is not because one is white and the other is colored, but, because of superior advantages and circumstances possessed by the one race over the other, a greater number of the more fortunate race is found to possess the qualifications which the framers of the constitution deemed essential for the exercise of the elective franchise.

We have searched the record in vain to discover any averment that the officers of the state charged with the duty of selecting jurors in any manner exercised the power devolved upon them to the prejudice of the appellant, by excluding from the jury list members of the race to which he belongs. The motion contains much irrelevant matter, set up with great prolixity, and in involved and obscure language. But repeated and careful examination conducts us to the conclusion that much of its seeming obscurity vanishes when we read the motion in the light of the opinion entertained by counsel as to how the supposed discrimination has been made. He did not intend to charge, by the motion, that the officers by whom the grand jury was selected violated the law, but that they were, by the law under which they acted, required to select jurors from certain lists furnished to them by the officers charged with the duty of holding elections in the state, and that these election officers, in making such lists, discriminated against the race of appellant. In this view, the motion was properly denied, for the reason that jurors are not selected from or with reference

to any lists furnished by such election officers. No such list is required to be made for use in selecting jurors, nor does the motion distinctly charge that any such was returned to the officers charged with the duty of selecting jurors, and by them used. The motion is based on the assumption that such list was essential to the selection of the grand jury, and without it no jury could be drawn, and that the list was made by discriminating against the negro race.

Our laws in reference to elections, and in reference to the selection of grand and petit juries, are totally distinct. To be an elector, or to serve upon a jury, one must be registered as a voter. But the acts and doings of those charged with holding elections can exercise no influence upon those by whom juries are selected. One may be denied the right to vote by the election officers, and yet be permitted to sit upon juries, grand or petit; and one may be ineligible to sit upon a jury, and yet qualified and permitted to vote. By sec. 241 of the constitution, it is provided that "every male inhabitant of this state, except idiots, insane persons and Indians not taxed, who is a citizen of the United States, twenty-one years old and upwards, who has resided in this state two years, and one year in the election district, or in the incorporated city or town, in which he offers to vote, and who is duly registered as provided in this article, and who has never been convicted of bribery, burglary, theft, arson, obtaining money or goods under false pretenses, perjury, forgery, embezzlement or bigamy, and who has paid, on or before the first day of February of the year in which he shall offer to vote, all taxes which may have been legally demanded of him, and which he has had an opportunity of paying according to law, for the two preceding years, and who shall produce to the officer holding the election satisfactory evidence that he has paid said taxes, is declared to be a qualified elector; but any minister of the gospel in charge of an organized church shall be entitled to vote after six months' residence in the election district, if otherwise qualified." Sec.

264 declares who shall be qualified as jurors. It is as follows:
"No person shall be a grand or petit juror unless a qualified
elector and able to read and write; but the want of any such
qualification in any juror shall not vitiate any indictment or
verdict. The legislature shall provide by law for procuring
a list of persons so qualified, and the drawing therefrom of
grand and petit jurors for each term of the circuit court." It
is not necessary that one desiring to register shall have paid
his taxes as prescribed by sec. 241. That has to do with vot-
ing, and not registration. *Bew* v. *State*, 71 Miss., 1. One
who has registered, and has in fact paid his taxes, although he
has not offered to vote, and therefore has not produced to the
officers holding an election satisfactory evidence of such pay-
ment, and who can read the constitution (*Mabry* v. *State*, 71
Miss., 716) and write, is qualified, under the constitution, to
sit as a juror. It is true that sec. 241, in declaring who are
electors, seemingly imposes, as an essential qualification, that
the elector not only shall have paid his taxes, but also shall
have produced satisfactory evidence thereof to the officers hold-
ing an election. But the section must have a reasonable and
sensible construction. Registration, and payment in fact of
the taxes as prescribed, are the substantial things required to
qualify one as an elector. Proof of the fact that taxes have
been paid, to the satisfaction of the election officers, is also re-
quired when the elector comes to vote; but, when he is pre-
sented as a juror, such payment is proved before the court,
and not by the fact that he has been permitted to vote. If in
truth he has paid his taxes, and possesses the other requisite
qualification, the fact that he has never offered to vote, and
therefore has never "produced to the officers holding an elec-
tion satisfactory evidence that he has paid said taxes," or if,
offering to vote, has failed to satisfy the officers that he has
paid taxes, does not render him ineligible as a juror.

Section 2358 of the code prescribes how the jury lists shall
be made. It provides that "the board of supervisors at the

first meeting in each year, or at a subsequent meeting if not done at the first, shall select and make a list of persons to serve as jurors in the circuit court for the next two terms to be held more than thirty days afterwards, and, as a guide in making the list, they shall use the registration books of voters, and it shall select and list the names of qualified persons of good intelligence, sound judgment, and fair character, and shall take them, as nearly as it conveniently can, from the several election districts, in proportion to the number of qualified persons in each, excluding all who have served on the regular panel within two years, if there be not a deficiency of jurors.'' It is from the list thus made that grand and petit juries are drawn. The sections of the code under which the appellant claims that he was discriminated against, have relation, not to the selection of juries, but to the subject of registration and voting; and his contention is not that persons entitled to register were denied registration by the registrar, but that the managers of elections are, by the law, made judges of the qualifications of electors offering to vote, and have denied to persons qualified to vote the right so to do. Conceding this to be true, we fail to perceive in what manner the appellant has been injured. The managers are required to supervise the election, and are authorized to examine, on oath, any person duly registered and offering to vote, touching his qualifications as an elector. They are the judges of the qualifications of such persons, and may deny the right to vote to one not entitled, though he be registered. But they have no power to strike the name of such person from the books, nor to put any additional names thereon. The registration book of the county does not go into the possession of the managers of the election, but they are furnished with poll books which contain the names of the registered voters in the district, copied from, or made contemporaneously with, the registration book.

As votes are cast, one of the clerks of the election takes down on a list the names of the voters, while the other enters a

check upon the poll book, opposite the name of such person, and, at the close of the election, the votes are counted and the result declared. And the statute provides that "the statement of the result of the election in their election district shall be certified and signed by the managers and clerks, and the poll books, tally lists, list of voters, ballot boxes and ballots shall all be delivered, as required, to the commissioners of election." Code, § 3670. This is the only list known to us that the law requires to be made by the officers. It does not show, or purport to show, who are qualified electors, but only who have voted; and it has no relation except to matters connected with the election, and performs no function in reference to the selection of jurors. The boards of supervisors, by which bodies jury lists are made, never see these lists. They are returned and dealt with by the election commissioners, a wholly different body. And so, if it be true that the managers of elections have discriminated against colored voters, and unlawfully denied them the right to vote, it does not appear how the appellant has been deprived of any advantage or protection afforded to him either by the constitution or laws of this state or by the constitution of the United States.

There is no suggestion in the motion that the jury commissioners were guilty of any fraud or discrimination in selecting the jurors. If in truth there was no registration book in the county to guide them in their selection of the jurors, their action in making the jury list was irregular, and, upon objection made before the grand jury was impaneled, the panel would have been quashed. *Purvis* v. *State,* 71 Miss., 706. But our statute provides that "before swearing any grand juror as such, he shall be examined by the court on oath touching his qualification, and after the grand jurors shall have been sworn and impaneled, no objection shall be raised, by plea or otherwise, to the grand jury, but the impaneling of the grand jury shall be conclusive evidence of its competency and qualification, but any party interested may challenge or except to the array for

fraud." *Head* v. *State*, 44 Miss., 731; *Durrah* v. *State*, 44 Miss., 789.

In *Neal* v. *Delaware*, 103 U. S., 370, and *Gibson* v. *Mississippi*, 162 U. S., 565, the supreme court of the United States has thoroughly discussed the subject of the right of a negro to the impartial protection of the law, and has clearly expressed the circumstances under which, and the means by which, that right is to be vindicated. If, by the constitution or laws of the state, negroes are, by reason of their race, color, or previous condition of servitude, excluded from juries, or in such other manner discriminated against as that a fair and impartial trial cannot be had in the state courts, then a negro proceeded against in the courts of the state may have his cause removed to the courts of the United States for trial. If there is no discrimination by the law, but the complaint is that by the act of the officers of the state, charged with the administration of fair and impartial laws, discrimination has been made against the race, the defendant may not have a removal of his cause, but must make his defense in the state courts, and appeal from the final judgment of the supreme court of the state to the supreme court of the United States.

In *Gibson* v. *Mississippi*, *supra*, the supreme court of the United States declared that neither the constitution nor laws of this state prescribed any rule for or mode of procedure in the trial of criminal cases which is not equally applicable to all citizens of the United States, and to all persons within the jurisdiction of the state, without regard to race, color, or previous condition of servitude. We can discover nothing in the record which shows that the appellant, either by the laws of this state or by their administration, has been denied the right of a fair and impartial trial. The motion to quash the indictment, and for removal of the case, were properly overruled. We have dealt with the case upon the assumption that the facts set out in the motion are true. No objection was made in the court below because the proof was made by affidavits instead of by

witnesses, and it is common practice in our courts, in the absence of objection, to hear affidavits on motions.

The error assigned touching the action of the court in admitting evidence of the state of feeling of appellant towards the woman Lavinia, at whom the shot was fired that killed Nancy Miner, is not maintainable. The defendant himself, on cross-examination of the witness Eliza Miner, drew out this evidence. But, aside from this, the evidence was entirely competent as tending to show *quo animo* the fatal shot was fired.

*The judgment is affirmed.*