FLOWERS v. STATE.

In Banc. June 13, 1949.

No. 37251 (41 So. (2d) 352)

F. F. Mize, for appellant.

George H. Ethridge, Assistant Attorney General, for appellee.

McGehee, C. J.

The appellant, Hartness Flowers, was jointly indicted with his brother, James Flowers, for the crime of assault and battery upon one William Dickens by the use of a shotgun and a rifle with intent to kill and murder him. A severance requested by the appellant was granted. He was tried and convicted of the said crime, and was sentenced to serve a term of seven and one-half years in the State penitentiary.

The errors assigned as grounds for reversal are: (1) That the defendant was erroneously denied a change of venue. (2) That after the trial judge, upon motion of the defendant, had quashed the three panels of petit jurors summoned for the week of the trial, he should have also sustained the defendant's motion to quash the three panels thereafter summoned in their stead by the sheriff under the order of the court. (3) That the trial court erred in overruling the defendant's motion to quash the indictment which had been returned against him during the previous week of the court term, but which motion to quash was not filed until the list of petit jurors originally summoned for the second week had been quashed and not until after the defendant's motion to quash the three panels of jurors which had been summoned in their stead by the sheriff under the order of the court had been overruled. And (4) that the trial

court erred in not granting a directed verdict in favor of the defendant, and in granting each of the instructions for the State, the ground of such assignment of error being that the evidence was insufficient to sustain a conviction of the crime charged.

The record discloses that the proof taken on the motion for a change of venue was such as to clearly show that there was no abuse by the trial judge of the judicial discretion vested in him when he denied the change of venue.

As to the second assignment of error, it appears that in filling the jury box for the year each member of the board of supervisors made up a list of the names of persons in their respective districts to serve as jurors, but failed to adjudicate on the minutes of the said board that these persons so selected were qualified electors as required by law, and made no record of their names on such minutes; that the chancery clerk, as clerk of the board of supervisors, failed to certify the lists of names to the circuit clerk in order that he could put the names on separate pieces of paper and place them in the jury box; that instead of following the procedure aforesaid, the members of the board had personally placed the names in the box; and that there was almost a total departure from the method prescribed by Section 1766, Code of 1942, for the filling of the jury box with names of persons to serve as jurors for the year 1948.

Therefore, the trial judge was of the opinion that he had no other alternative than to quash the three panels of petit jurors originally summoned for the week of the trial when the foregoing procedure was disclosed by the proof before him. He correctly held, after having quashed such panels as drawn from the ·so-called jury box, that in truth and in fact the county at that time had no regular jury box out of which to draw the names of jurors to take the place of the three panels which had been quashed. Thereupon, the court acted pursuant to Section 1794, Code 1942, by directing the requisite num-

ber of persons, qualified as jurors, to be summoned by the sheriff to appear forthwith to serve as petit jurors the same as if they had been regularly drawn and summoned. The statute expressly provides for this procedure "if there be not a jury-box to be drawn from." And the duty of the trial judge to follow this procedure is mandatory under the decision of J. W. Sanders Cotton Mills v. Moody, 191 Miss. 604, 2 So. (2d) 815.

The order of the court directed the sheriff to summon thirty-six men from the body of the county to serve as such jurors, and it appears that instead of going out into the several districts of the county and summoning these men, he summoned most of the men who had been originally empaneled on the three jury panels for the week, or at least such of them as were still present at court, and they were empaneled along with others to constitute the three petit juries. It does not appear that there was anything objectionable about these men for jury service, and no reason is shown why they should have been discriminated against by the sheriff in the selection of the thirty-six men to serve. They were already in attendance, and entitled to their per diem and mileage at least for that day, and it does not appear how the rights of the defendant could have been prejudiced by their being empaneled on the juries instead. of the sheriff being required to go to their respective communities and summon their neighbors in their place.

It further appears that in filling out the list of thirty-six men to serve under the order of the court, the sheriff included the names of the only two Negro qualified electors in the county. He served process upon one of them, and he was empaneled as a petit juror. The other was not found, and the return made by the sheriff on the process discloses that he was out of the county and in attendance at the Alcorn Agricultural & Mechanical College, a State institution maintained for the education of Negroes.

It further appears, however, that a new registration of qualified electors of the county was ordered at the April 1948 meeting, prior to the commission of the alleged crime in July of 1948, and that prior thereto there were one hundred and twelve Negroes registered on the poll books of the county, but it does not appear as to how many of them would have been qualified jurors under Section 264 of the Constitution of Mississippi, and Section 1766 of the Code of 1942, if no new registration had been ordered, since persons, both white and black, are required to be qualified male electors in order to be eligible for jury service.

Section 3222, Code of 1942, provides as follows: "If at any time the registration books of the county be or become in such confusion that a new registration is necessary to determine correctly the names of the qualified electors and the election district of each, the board shall order a new registration of voters to be made in like manner as in case of the loss or destruction of the books."

At the April 1948 meeting of the board, it was expressly adjudicated on the minutes thereof that the cause of ordering the new registration under said Section 3222, supra, then existed, and the registrar of the county was directed to give proper notice, visit the various voting precincts, and take such new registration. This was done, and only the two Negroes hereinbefore mentioned saw fit to reregister. There was, therefore, no discrimination against Negroes in the empaneling of jurors when the appellant was indicted and tried in November 1948. The white men who may have been qualified under the old registration, but who failed to reregister, where likewise ineligible for jury service, following the taking of such new registration. It is necessary that they be qualified electors at the time they are being empaneled on a grand or petit jury.

We have set forth the foregoing situation as to the qualifications of Negroes as jurors at the time of indict-

ment and trial of appellant for the reason that the third assignment of error hereinbefore mentioned is that the court erred in overruling the defendant's motion to quash the indictment after the three petit juries had been finally empaneled for the trial of this and other cases, the ground being that "defendant is a member of the negro race and the party on whom defendant is charged with making the assault is of the white race. That there were no negro names listed or placed in the jury-box from which the Grand Jury was drawn; that there were qualified negroes residing in the County to serve as jurors, and that no negro has served as a juror or his name listed or drawn as a juror in Leake County for the past twenty years." And the motion to quash the indictment was based on the further ground "That the jurors composing the Grand Jury that returned said indictment were drawn from an illegal jury-box in that there was no legal listing of the names to be placed in the jury-box; no list of the individual members by the Board of Supervisors was furnished as required by law to the Chancery or Circuit Clerk of said County. Nor, were there any entries of any nature whatever in regard to the filling of said jury-box entered on the minutes of the Board of Supervisors, and there was a total departure from the statute providing the manner in which individual names should be placed in the jury-box."

There being no discrimination against Negroes for the reasons heretofore stated, there is left for our consideration only the last above-quoted ground of the motion for quashing the indictment. Section 1784, Code of 1942, provides: "Before swearing any grand juror as such, he shall be examined by the court, on oath, touching his qualification; and, after the grand jurors shall have been sworn and impaneled, no objection shall be raised, by plea or otherwise, to the grand jury; but the impaneling of the grand jury shall be conclusive evidence of its competency and qualifications; but any party

interested may challenge or except to the array for fraud."

■ ■ This section requires that objections to the qualifications of grand jurors must be made, if at all, before they are empaneled, unless an accused has been denied the opportunity for doing so, and that it cannot be raised afterward. Dixon v. State, 74 Miss. 271, 20 So. 839; State v. Forbes, 134 Miss. 425, 98 So. 844; Hill v. State, 89 Miss. 23, 42 So. 380.

The trial court in overruling the motion to quash the indictment, as not having been seasonably made, found as a fact that at the time of the return of the indictment on November 8, 1948, the defendant was represented by an able, eminent and astute lawyer; that by reason of the appearance bond which the defendant had given to await the action of the grand jury, he was presumed to be at court on the convening thereof when the grand jury was empaneled; that he had reason to believe that his case would be investigated by the grand jury when it was empaneled and that he could have obtained information as to the venire from which the grand jury would be drawn some eight or ten days in advance of the court term. After the return of the indictment, the record discloses that the defendant plead thereto, sought and obtained a severance, presented a motion for a change of the venue of his trial under the indictment, and then presented motions for the quashing of the first and second panels of petit juries, as hereinbefore shown, before ever filing his motion to quash the indictment.

In the case of Hill v. State, supra, the Court said: "The court below refused to consider the motion to quash the indictment solely on the ground that the objection to the constitution of the grand jury should have been made before the grand jurors were sworn and impaneled. Section 2375, Code of 1892, making the impaneling of the grand jury conclusive evidence of its competency and qualifications, has been often considered by this court, and has been held applicable even to a defend-

ant who was not advised that any accusation against him was being considered by that body. Cain v. State, 86 Miss. 505, 38 So. 227; Posey v. State, 86 Miss. 141, 38 So. 324, 4 Ann. Cas. 221; Head v. State, 44 Miss. 731; Durrah v. State, 44 Miss. 789. We adhere to the cases.''

In the case of Reynolds v. State, 199 Miss. 409, 24 So. (2d) 781, it was held that the statute providing that the empaneling of a grand jury shall be conclusive evidence of its competence and qualifications permits of no exceptions, that where there has been no challenge to the array for fraud, and the grand jury, though improperly selected, had been empaneled, and defendant's motion to quash indictment on the ground that the grand jury had been improperly selected was filed, motion to quash the indictment was properly overruled. Of course, this would not be true except for the fact that it is a matter of State procedure as to when objections to an indictment shall be raised to avoid expense and delay where no right of an accused under the Federal Constitution is involved.

██ ██ The question raised as to the manner in which the lists of jurors were selected by the board of supervisors and placed in the jury box involves solely a question of State procedure, and we are therefore of the opinion that under the holding of the Hill case, supra, and other cases therein cited, the trial court was not in error in overruling the motion to quash the indictment on that ground.

Section 1798, Code of 1942, reads as follows: ''All the provisions of law in relation to the listing, drawing, summoning and impaneling juries are directory merely; and a jury listed, drawn, summoned or impaneled, though in an informal or irregular manner, shall be deemed a legal jury after it shall have been impaneled and sworn; and shall have the power to perform all the duties devolving on the jury.''

██ ██ The other ground of the motion to quash being that the names of no Negroes were in the jury box

from which the grand jury and petit jury were drawn does present a Federal question, but the assignment is in our opinion without merit for the reason that if the names of the one hundred and twelve Negroes that appeared on the poll books had been in the jury box at the time the grand jury was drawn, none of them, save the two who reregistered, could have served on either the grand or petit juries for the reason that they were not qualified electors at the time the grand jury and the petit juries were empaneled. Among the first questions that the trial judge would have been required to ask those who were being empaneled on either jury would have been whether or not they, and each of them, were then qualified electors of the county. If not, they would not have been legal jurors under the Constitution and Laws of this State. Moreover, we know of no interpretation of the Federal Constitution that would entitle a defendant to have anyone serve on the jury other than a qualified elector.

On the merits of the case, it appears from the State's evidence that ten white men who resided in the neighborhood where the defendant lived, as well as some of the colored citizens of the community, were dissatisfied with the conduct of one Martin Flowers, a cousin of the defendant; that these ten men went first to the home of the defendant and his brother James Flowers and inquired of their father, "Piddler" Flowers, as to whether or not the said Martin Flowers was there. Upon being advised that Martin Flowers had left and gone to his home, they proceeded in two automobiles and a pick-up truck to the nearby home of Martin Flowers to talk to him in regard to his objectionable conduct, which is alleged to have consisted of beating his wife, doing "a lot of big talk in the community, and shooting off his pistol", etc. These men claimed that they were on a peaceful mission and there is no proof in the record that they did, or attempted to do, Martin Flowers any personal violence or harm. They testified that they were unarmed

except that one of their group, Fred Waggoner, had a pistol which he left in the automobile when they entered into the yard of Flowers to talk to him. That after talking with the said Flowers, he stated that he thought that it would be best for him to leave the community, and they advised him that they thought it might be best for him to do so. That while Martin Flowers was returning from his front porch into his house, these men went out of the yard to their automobiles to leave the premises. That thereupon the defendant Hartness Flowers and James Flowers, who had followed them to the home of their said cousin, began shooting into the automobiles and truck with a shotgun and rifle from behind a house or shed where they were concealed, hitting one of the cars thirteen and the other nine times and the truck five times with rifle bullets and buckshot, and with the result that they seriously wounded William Dickens, a member of the group.

On the other hand, Martin Flowers, who had told the officers that none of these white men had any guns, testified at the trial that they drew guns on him, and the defendant Hartness Flowers testified that some of these men were shooting their guns at the time he and his brother were firing into the automobiles and truck. Fred Waggoner says that after he had returned to his car, and while the shooting was in progress, he shot his pistol a time or two as he was leaving the premises.

While we would not undertake to defend or condone the action of these men on the occasion complained of, when they went in a group, during the nighttime, to the home of Martin Flowers on their asserted mission, we are nevertheless of the opinion that insofar as the defendant Hartness Flowers is concerned, he did not do the shooting in his own necessary self-defense, nor in the lawful defense of another, but commenced the shooting with intent to kill after these men were making ready to leave the premises. At least, on the conflicting

evidence, the jury was amply warranted in so finding. The judgment and sentence of the trial court will therefore be affirmed.

Affirmed.