288 So.2d 452 (1974)
Howard Earl POLK
v.
STATE of Mississippi.
No. 47463.
Supreme Court of Mississippi.
January 14, 1974.
Bobby J. Garraway, Lumberton, for appellant.
A.F. Summer, Atty. Gen., by Billy L. Gore, Special Asst. Atty. Gen., Jackson, for appellee.
SUGG, Justice:
This is an appeal from the Circuit Court of Lamar County where appellant, Howard Earl Polk, was convicted of manslaughter and was sentenced to serve fifteen years in the penitentiary.
*453 The decedent, Hershel Busha, was fatally shot while driving in an automobile with his brother Oliver, his cousin Daniel Busha, and Polk. Appellant and decedent spent most of the afternoon before the homicide together and the four men were drinking together on the evening of the shooting. Decedent objected to some "vile language" used by Polk at the home of decedent in the presence of the wife, sister, two children of Polk and Daniel Busha's girl friend. Daniel Busha testified that, at this time, the decedent then said, "Come on and let's go down to the woods and I'll beat hell out of all of you," whereupon the four men got into the decedent's car and drove away; that both Polk and decedent were drunk. Decedent drove the car while the defendant sat in the right front seat, Daniel Busha occupied the left rear seat, and Oliver Busha promptly fell asleep in the right rear seat, apparently unworried by the threat of his brother to "beat hell out of all of you." Daniel Busha testified that at some point during the excursion in the automobile the defendant opened the glove compartment, removed a pistol from it, and demanded that decedent stop the car. When the decedent did not respond as ordered, the defendant grabbed him by the neck, pulled him over to the passenger side and fired two shots.
Oliver Busha testified that he was awakened by the sound of shots in the front seat. Oliver Busha reached into the front seat, grabbed his brother by the head, and saw that he was dead. When Oliver Busha attempted to wrest the gun from the defendant's hand, the gun was fired twice, defendant knocked Busha to his knees, whereupon Busha fled into the woods and observed the car drive away from the scene. Thereafter Polk ordered Daniel Busha to get on the rear seat of the car, who, after pretending to do so fled from the scene.
Dr. Thomas Puckett, a physician and pathologist, testified that he examined the body of the decedent and found an entrance wound in the top of the skull. Dr. Puckett estimated that the gun which fired the fatal shot was held from four to six inches from the decedent's head.
The defendant, Howard Earl Polk, took the stand in his own behalf and said that he had killed Hershel Busha in self defense. Polk testified that decedent stopped the car, lunged for a pistol that was lying on the dashboard, at which time he also grabbed for the weapon. In the ensuing struggle the pistol discharged and the decedent was fatally wounded in the head. Polk admitted that he had been convicted of manslaughter previously.
The defendant makes four assignments of error. In the first of these, the defendant contends that his constitutional rights were violated because the trial court failed to appoint counsel for him during the period between his preliminary hearing and indictment. Defendant was represented by retained counsel at the preliminary hearing on December 17, 1971, but since he had no further funds, released his counsel immediately after the preliminary hearing and remained in jail until January 24, 1972 (approximately 40 days) at which time an indictment was returned against him. The trial court appointed counsel for the defendant on January 25, 1972, and set the case for trial in July, 1972. The defendant did not request appointed counsel after the preliminary hearing and before indictment. Counsel was appointed the day following the indictment and was present at the arraignment and several subsequent pretrial hearings.
Normally, objections to the qualifications of grand jurors must be made before the grand jury is impaneled, and such objections cannot be raised afterward unless the accused has been denied the opportunity of objecting at the proper time. Flowers v. State, 209 Miss. 86, 41 So.2d 352 (1950), cert. denied 339 U.S. 946, 70 S.Ct. 800, 94 L.Ed. 1360 (1950); Cameron v. State, 233 Miss. 404, 102 So.2d 355 (1958); Miss. Code Ann. § 13-5-43 (1972). Timely objection to the qualifications of *454 the grand jurors was not made in the case at bar because the defendant had no attorney during the period between the preliminary hearing and the time the grand jury was impaneled. However, the trial court granted a hearing on the question of the selection of the jury list from which the grand jury was chosen, hence the defendant's Sixth Amendment right to counsel at every critical stage of the prosecution against him was preserved. We therefore hold that this assignment of error is not well taken.
Two of the remaining three assignments of error concern certain irregularities in the selection of the grand jury which indicted the defendant. The defendant urges, first, that the indictment should be quashed because the provisions of Miss. Code Ann. § 13-5-3 (1972) were not complied with. Section 13-5-3 provides that the board of supervisors shall select and make a list of persons to serve as jurors for the succeeding twelve months. It is here noted that the jury list was drawn under § 13-5-9 instead of § 13-5-3, Miss. Code Ann. (1972).
It was shown by the Chancery Clerk of Lamar County that an order providing for the random selection of jurors was on the minutes of the Board of Supervisors. The order provided that the names of the prospective jurors were to be taken from the land rolls and the list of qualified electors so that discrimination would be eliminated in accordance with the Voting Rights Act of 1965; that this order immediately followed the list of jurors appearing on the minutes of the Board.
The supervisors each testified that they selected the jurors by taking every fifth name on the poll books and every seventh name on the land rolls. Some supervisors started at the beginning of the poll books and land rolls and worked forward while others started at the end and worked backwards. After each supervisor selected the jurors for his district, the list was given to the clerk who recorded the names on the minutes of the April, 1971 meeting of the board of supervisors.
Under § 13-5-87 the provisions of law with reference to the listing, drawing, summoning and impaneling are merely directory and a jury selected in an informal or irregular manner is a legal jury after being impaneled and sworn. In Shinall v. State, 199 So.2d 251 (Miss. 1967), cert. den. 389 U.S. 1014, 88 S.Ct. 590, 19 L.Ed.2d 660 (1967), we stated:
We are of the opinion that Mississippi Code Annotated section 1766 (1956) in which the Board of Supervisors is directed to select "qualified persons of good intelligence, sound judgment, and fair character" is not a jurisdictional requirement, and although it is the duty of the Members of the Boards of Supervisors to select good citizens for jury service (Black v. State, 187 So.2d 815  Miss. 1966), nevertheless, the jury laws of this State are directory and the selection of the jury list in an informal or irregular manner does not render it illegal. Miss. Code Ann. § 1798 (1952). (199 So.2d at 256).
In the case at bar the jury list was selected under the alternate procedure prescribed by Miss. Code Ann. § 13-5-9 (1972) and in Reed v. State, 199 So.2d 803 (Miss. 1967), cert. den. 390 U.S. 413, 88 S.Ct. 1113, 19 L.Ed.2d 1273, we held that the statutes relating to the selection of juries under §§ 13-5-3 and 13-5-9 Miss. Code Ann. (1972) [Section 1776 and 1762-03 Miss. Code Ann. 1942] are in pari materia. We therefore hold that § 13-5-9 (1972) is directory only and the selection of a jury list in an informal or irregular manner under the section does not render the jury illegal. Miss. Code Ann. § 13-5-87 (1972).
We recognize that this Court has held that the statute (13-5-87) has no application when there is no effort made to comply with governing statutes and there is a total departure from the statutory scheme of selecting juries. Rhodman v. State, 153 Miss. 15, 120 So. 201 (1928).
*455 In Ellis v. State, 142 Miss. 468, 107 So. 757 (1926), the Board of Supervisors of Leake County entered an order at the January, 1924 meeting continuing the matter of selecting the names for the jury boxes until the next regular meeting. At the February, 1924 meeting the members of the board handed the chancery clerk typewritten names from their respective districts to be put in the jury boxes. The lists were not signed by the supervisors or marked filed by the clerk, neither were they recorded on the minutes of the board of supervisors. In Ellis the Court stated:
In the present case, as in the Atkinson [Atkinson v. State, 137 Miss. 42, 101 So. 490] and Simmons [Simmons v. State, 109 Miss. 605, 68 So. 913] cases, the action of the court, of which the complaint is made, is that there was no attempt to comply with the statute with reference to the making up of the jury boxes. The board of supervisors, as this court has often held, can only act through its minutes. The making up of the jury boxes by the board under the statute involves the action of a board, and such action must appear upon its minutes. They can act in no other way. The individual members of the board have no authority of law to make out the list of names from their respective districts to go into the jury boxes. Here we have the jury boxes made up by the individual members of the board, without any action of the board as such. The unsigned lists were handed by each member to the clerk of the board, who, in turn, without any authority shown on the minutes of the board, turned the lists over to the circuit clerk, the custodian of the boxes, who emptied the old names out of the boxes and put therein the new lists thus made up. In other words, the board of supervisors did absolutely nothing with reference to making up the jury boxes. If what was done by the individual members of the board and the circuit and chancery clerks had been done by a mere interloper, there would be no less authority for it. We have here certain names in the jury boxes from which the grand and petit juries for the term of court at which the appellant was tried were drawn. The minutes of the board of supervisors are consulted to see how those names got into the jury boxes, and we find they are silent. By parol, the facts are developed. It is shown that persons having no authority so to do, made up the jury boxes. There is no evidence that the board made any attempt to comply with the statute with reference to making up the jury boxes. (142 Miss. at 474, 475, 107 So. at 759).
We distinguish the case at bar from Ellis because the board of supervisors, while in session, selected the names of persons to be placed on the jury list and these selections appeared on the minutes of the board. It is true there was no opening order declaring that this was the list of jurors drawn for the term, but since the list appeared on the minutes together with an order prescribing the manner in which the jury was to be drawn, this constituted an attempt to comply with the statutes with reference to making up the jury lists.
A jury, after it has been impaneled, should not be quashed except for fraud or unless there is a total departure from the course prescribed by statute. Harris v. State, 155 Miss. 794, 125 So. 253 (1929). See also Wiggins v. State, 224 Miss. 414, 80 So.2d 17 (1955) and Moore v. State, 237 So.2d 844 (Miss. 1970). We hold that the trial court properly overruled the motion to quash the grand jury because there was substantial compliance with Miss. Code Ann. § 13-5-9 (1972) by the board of supervisors in making up the list of persons to serve as jurors.
On the second issue involving the grand jury it is argued that the defendant was denied equal protection under the Fourteenth Amendment to the United States Constitution because the grand jury lists were made up from supervisors' districts which had not been reapportioned to equalize the number of residents in the *456 various districts. The record reflects the fact that an equal number of grand jurors was drawn from each of the supervisors' districts; that population varied in the districts from 1264 in District 3 to 4,046 in District 1.
In Henry v. State, 209 So.2d 614 (Miss. 1968), we said:
[T]he contention of the appellant that there should have been more names in the list of jurors from Beat 1 because more people live in this beat than in any other beat is not well taken, because there is no discrimination shown in the method of selecting the jury. (209 So.2d at 616).
In Ladner v. State, 197 So.2d 257 (Miss. 1967), defendant moved to dismiss the indictment on the ground that the grand jurors were drawn from a list made up by the board of supervisors; that the list of persons selected for jury service by the board was irregular and improper for the reason that the board of supervisors' districts were not constituted on the basis of population as required by Section 2870 Mississippi Code of 1942 Annotated. The Court held that the motion to dismiss was properly overruled because:
[T]he fact that a Board of Supervisors fails to select the jury from the districts proportionately does not authorize the quashing of the venire, nor the indictment... . (197 So.2d at 260).
In Atkinson v. State, 137 Miss. 42, 101 So. 490 (1924) the board of supervisors in making up the jury list failed to apportion the names put in the boxes between each supervisor's district in proportion to the number of qualified electors therein. This Court held that a motion to quash the jury list was properly overruled because the manner of the making up of the list was a mere irregularity.
In Simmons v. State, 109 Miss. 605, 68 So. 913 (1915), the jury list was made up altogether from one supervisor's district. This Court held that making up the list in that manner was a mere irregularity which was cured by Section 2718 Code of 1906 [§ 13-5-87 Miss. Code Ann. (1972)] and a conviction would be upheld in the absence of a showing on the part of the defendant that his rights had been prejudiced because of the manner in which the jury lists were made up.
The case at bar falls within the purview of Henry, Atkinson, Simmons and Ladner. In the absence of a showing that there was discrimination in the method of selecting jurors, the mere fact that equal numbers of jurors were drawn from districts having unequal population is not sufficient to quash the grand jury panel and vitiate the indictment.
We hold that the motion was properly overruled on the second ground assigned in the motion to quash because there was no showing any rights of appellant were prejudiced.
The last assignment of error is that the verdict of the jury was against the overwhelming weight of the evidence. It is the function of the jury to resolve the issue submitted to it and the jury is the sole judge of the credibility of witnesses and the weight and the worth of their testimony. Clanton v. State, 279 So.2d 599 (Miss. 1973) and Wilson v. State, 264 So.2d 828 (Miss. 1972) and cases cited in both opinions. Since there was ample evidence, which if believed by the jury, was sufficient to sustain the verdict, it will not be disturbed on appeal. The jury resolved the issue of guilt against appellant and the verdict was not against the overwhelming weight of the evidence.
Affirmed.
GILLESPIE, C.J., and PATTERSON, INZER and WALKER, JJ., concur.