Jimmy COPELAND, Petitioner,

v.

STATE OF MISSISSIPPI, Respondent.

No. EC 74–149–S.

United States District Court,
N. D. Mississippi, E. D.

June 9, 1976.

Robert Kelly, Dodson, Kelly & Butts, Oxford, Miss., for petitioner.

William B. Lowrance, Sp. Asst. Atty. Gen., State of Mississippi, Jackson, Miss., for respondent.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

■ This is a habeas corpus proceeding under 28 U.S.C. § 2254,[1] wherein petitioner seeks release from confinement pursuant to his conviction in the Circuit Court of Alcorn County, Mississippi, on a charge of unlawful sale of barbiturates. Copeland was sentenced to serve a term of 5 years in the state penitentiary and his conviction was subsequently affirmed without opinion on direct appeal to the state Supreme Court. *Copeland v. State*, 292 So.2d 171 (Miss.1974).

The essence of petitioner's collateral attack on his conviction is that black persons were systematically excluded from the panel of jurors from which the grand jury, which indicted him, and the petit jury, which convicted him, were chosen. This court appointed counsel to assist petitioner in the prosecution of the instant action pursuant to 18 U.S.C. § 3006A(g) and an evidentiary hearing was held on January 5, 1976. Post-hearing briefs were later submitted by the parties.

Petitioner and one Franklin Dyer were indicted on the same or similar charges at the same term of court and both employed the same attorney to represent them. By way of demurrer trial counsel succeeded in

---

1. Proceeding pro se, petitioner's initial pleading named the State of Mississippi as respondent. The proper respondent was, of course, the warden or superintendent of the state institution in which petitioner was confined at the time of the commencement of the action. This procedural or technical defect has no effect on the outcome of the case. *See English v. Miller*, 341 F.Supp. 714 (E.D.Va.1972), *reversed on other grounds*, 481 F.2d 188 (4th Cir. 1973).

obtaining a nolle prosequi upon motion by the state as to the original indictments against both Dyer and Copeland. Dyer and Copeland were indicted again on the same charges and scheduled for trial during the January 1973 term of court. Counsel again was able to obtain a nolle prosequi of the indictments by filing a motion to quash, which the state in effect confessed. The motion to quash was founded on a claim that blacks were systematically excluded from jury duty under the procedures then employed in Alcorn County for selecting the individuals to serve on the jury panel.

A new method of juror selection was implemented in Alcorn County by order of the board of supervisors dated February 14, 1973. This new procedure was first employed during the May 1973 term of circuit court. Indictments were again returned against Copeland and Dyer on charges of unlawful sale of barbiturates. Copeland was indicted in Case Nos. 10380 and 10383, while Dyer was charged in Case No. 10372.

The state proceeded first against Copeland in Case No. 10383 upon which charge Copeland was tried and convicted in July 1973. Dyer was later tried and convicted in October 1973. Case No. 10380 against Copeland has been continued to the present time.

The issue of racial discrimination in the selection of the jury panel was not raised by Copeland before or during his July 1973 trial. Dyer did raise this issue at his trial in October 1973 by means of a motion to quash; however, it was decided adversely to movant at both the trial and appellate levels. *Dyer v. State*, 300 So.2d 788 (Miss. 1974).

To complete the factual scenario, in October 1973, Copeland filed a motion to quash in Case No. 10380. So far as the record in this case discloses, no action has yet been taken on that motion.

In April 1975, petitioner was paroled from the Mississippi State Penitentiary but has indicated no desire to discontinue prosecution of the instant action.

In the post-hearing briefs submitted by the parties, counsel agreed upon the following list of issues to be decided by the court:

1. Whether petitioner waived his right to raise the issue of discriminatory jury selection procedures at his state court trial;

2. Whether petitioner has exhausted available state remedies; and

3. Whether the jury selection procedure employed at petitioner's trial had the effect of systematically excluding blacks from the panel from which grand and petit jurors were selected.

Addressing the exhaustion issue first, respondent takes the position that because Copeland has never presented to the Mississippi Supreme Court the question of systematic exclusion of blacks from the jury panel of the grand and petit juries which indicted and tried him, the present action should be dismissed for failure to comply with the exhaustion command of 28 U.S.C. § 2254. Although petitioner has made some attempt to present his issue to the state supreme court by means of a letter which he forwarded to that court in May 1974, that correspondence has no effect upon disposition of the exhaustion issue in view of the manner in which this court has determined to decide the question of exhaustion.

Respondent's exhaustion contentions are not difficult of resolution. In *Layton v. Carson*, 479 F.2d 1275, 1276 (5th Cir. 1973), the per curiam opinion included the following observation:

Petitioners for federal habeas corpus need not exhaust state remedies when it is plain that resort to the state courts would be futile. If the state's highest court has recently rendered an adverse decision in an identical case, and if there is no reason to believe that the state court will change its position, a federal court should not dismiss a petition for federal habeas corpus for failure to exhaust remedies.

The above-quoted rule from *Layton* has been cited with approval in *St. Jules v. Savage*, 512 F.2d 881 (5th Cir. 1975). *Cf. Gibson v. Blair*, 467 F.2d 842 (5th Cir. 1972).

■ Counsel for petitioner argues that insomuch as the discriminatory juror selection issue was presented to the Mississippi Supreme Court in the *Dyer* case, *Layton* applies to squelch any argument that Copeland has failed to exhaust available state remedies. Insomuch as the jury selection procedures were precisely the same in both the *Dyer* and *Copeland* cases, the court cannot but agree with petitioner on this point.

Although the Mississippi Supreme Court's opinion in the *Dyer* case fails to mention or treat any question concerning systematic exclusion of blacks from the jury which convicted Dyer, the record in that case, which has been made a part of the record in the instant action, clearly discloses that the exclusion issue was raised and argued on appeal. This court can only regard the supreme court's silence on the point as a decision adverse to Dyer. Accordingly, the court is of the opinion that Copeland should, under *Layton*, be treated as having exhausted available state remedies.

Moving on to the remaining two issues as framed by the parties, it appears that a very recent decision by the Supreme Court of the United States renders superfluous any decision by this court as to whether the jury selection procedures in effect in Alcorn County at the time of Copeland's indictment and conviction did, in fact, result in underrepresentation of blacks of constitutional dimensions.[2] For purposes of considering the question of whether, at his state trial, petitioner waived his right to raise the issue of discriminatory jury selection procedures the court will assume arguendo that the jury selection procedures employed were, in fact, discriminatory and unconstitutionally so.

Petitioner concedes he failed to interpose an objection to the jury selection procedures prior to his conviction in Case No. 10383 although his attorney had twice be-

fore successfully challenged the previously employed jury selection procedures. Copeland now argues that after the modification of juror selection procedures by the Alcorn County Board of Supervisors in February 1973, he was unable to object to the new procedures because they had never before been used and their effects remained unknown.

Under the laws of this state in effect at the time of petitioner's conviction (1973), the board of supervisors of each county possessed considerable discretion in determining the manner in which the master list of jurors for service in circuit court was drawn up or selected. Law of July 3, 1968, ch. 338, § 1 [1968] Miss.Laws (repealed 1975). The master list was prepared once each year at the direction of the board of supervisors. At the beginning of each term of court during the year, the names of jurors for service during the term are drawn at the direction of the circuit judge. Miss.Code Ann. § 13–5–27 (1972). For the first week of the term, the names of 62 jurors are drawn. Of that group, between 15 and 20 persons are then selected to serve as grand jurors. Miss.Code Ann. § 13–5–41 (1972).

Before swearing the grand jury, the circuit judge examines each juror concerning his or her qualifications to serve. Miss. Code Ann. § 13–5–43 (1972). According to both statutory and case law, any objections which a defendant or putative defendant may have to the qualifications of the grand jurors must be made before such jurors are impaneled and sworn unless no opportunity was afforded the defendant to object to the qualifications of the jurors prior to the impaneling of the grand jury. *Cameron v. State*, 233 Miss. 404, 102 So.2d 355 (1958); *Flowers v. State*, 209 Miss. 86, 41 So.2d 352 (1949).

Following the impaneling of the grand jury, those jurors remaining from the original group of 62 are used as the panel from which the petit juries will be selected. Miss.Code Ann. § 13–5–65 (1972).[3]

---

**2.** *Francis v. Henderson*, —— U.S. ——, 96 S.Ct. 1708, 48 L.Ed.2d 149, 44 U.S.L.W. 4620 (1976).

**3.** "After the drawing of the grand jury, the remaining jurors in attendance shall be impan-

eled into three petit juries for the first week of court if there be a sufficient number left, and, if not, the court may direct a sufficient number for that purpose to be drawn and summoned."

Challenges to the manner in which the panel from which petit jurors are selected is drawn up are subject to the same time requirements as challenges to the grand jury; that is, they must be made prior to the impaneling of the grand jury. Miss. Code Ann. § 13–5–81 (1972).[4]

■ The Supreme Court of the State of Mississippi has consistently held that "where the composition of the grand and petit juries was not questioned in the trial court . . . that . . . issue was effectively waived." *Holloway v. State*, 242 So.2d 454, 455–56 (Miss.1970), *citing Gordon v. State*, 160 So.2d 73 (Miss.1964). The instant case is apparently in exactly the same posture as the *Gordon* case insofar as state law concerning waiver is concerned. That is, under the law of this state, petitioner has effectively waived any right to question the manner in which the grand and petit juries in his case were selected.

■ However, an adverse state rule of law does not foreclose consideration of constitutional issues which may be raised in a federal habeas corpus proceeding. Most particularly insofar as the issue before this court is concerned, it has been held that "a state court's finding of waiver [does not] bar independent determination of the question by the federal courts on habeas, for waiver affecting federal rights is a federal question." *Fay v. Noia*, 372 U.S. 391, 439, 83 S.Ct. 822, 849, 9 L.Ed.2d 837, 869 (1963).

In considering the waiver issue in this case, the court is delighted to have benefit of the very recent decision in *Francis v. Henderson*, —— U.S. ——, 96 S.Ct. 1708, 48 L.Ed.2d 149, 44 U.S.L.W. 4620 (1976). The habeas petitioner in *Francis* had been convicted in state court in Louisiana in 1965 on a charge of felony murder. Although prior to his conviction Francis made no objection to the composition of the grand jury which indicted him, in 1971 he initiated a state action seeking collateral relief from his conviction on the ground that blacks had been systematically excluded from service on the grand jury which returned the indictment against him.

In *Francis*, the Supreme Court extended the rule of *Davis v. United States*, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973) to habeas proceedings seeking to overturn state court convictions pursuant to 28 U.S.C. § 2254. In *Davis*, the Court had held that a federal prisoner proceeding under 28 U.S.C. § 2255 could not, except for "cause shown," raise the issue of unconstitutional discrimination in the composition of the grand jury which indicted him or her when no objection on the point was made before trial as required in Fed.R.Crim.P. 12. The *Davis* holding in this regard has been applied to claims of discrimination involving petit as well as grand juries. *Morris v. Sullivan*, 497 F.2d 544 (5th Cir. 1974).

■ Reasoning that state time limitations concerning challenges to the validity or regularity of juror selection or qualification procedures possess the same qualities of legitimacy as the similar federal requirement embodied in rule 12, the Court in *Francis* deemed the extension of *Davis* to state convictions to be required by "considerations of comity and federalism." Under the rule of *Francis*, Copeland cannot be heard to complain about racial discrimination in the composition of the grand and petit juries before which his case was heard, absent a showing of cause, insomuch as it is undisputed that he failed to raise the issue prior to trial as required by state law.[5]

The *Francis* holding was capsulized by the Court in the last sentence of the opinion in the following language: "In a collateral attack upon a conviction [the *Davis*] rule requires . . . not only a showing of 'cause' for the defendant's failure to challenge the composition of the grand jury before trial, but also a showing of actual prejudice." —— U.S. at ——, 96 S.Ct. at 1711, 44 U.S.L.W. at 4622.

---

**4.** "A challenge to the array shall not be sustained, except for fraud, nor shall any venire facias, except a special venire facias, in a criminal case, be quashed for any cause whatever."

**5.** Miss.Code Ann. §§ 13–5–43, –81 (1972); *Holloway v. State*, 242 So.2d 454 (Miss.1970) discussed *supra*.

Copeland has not attempted to demonstrate any actual prejudice suffered by him as a result of the constitutional deprivation claimed by him other than invoking the language found in *Peters v. Kiff*, 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972) to the effect that prejudice is presumed in cases where there is an allegation of racial discrimination in jury selection. However, this very argument was rejected by the Court in its opinion in *Davis* which noted the distinction between the existence of a constitutional right, the question before the court in *Peters*, and the possible loss of an existing constitutional right through delay in asserting it, the question before this court and the court in *Davis*. 411 U.S. at 245, 93 S.Ct. at 1584, 36 L.Ed.2d at 226.

Copeland's final point is, of course, an attempt to show "cause" for his failure to raise the jury discrimination issue prior to or at trial. In this regard, the claim is made that since the juror selection procedure was newly adopted at the time of Copeland's trial, the manner of its operation and possible racial overtones were unknown. Unfortunately for petitioner, acceptance of the proposition that the operation of the new juror selection procedure as it related to the participation of blacks was an unknown factor, is not to say that the effects of the new system were unknowable at the time of Copeland's trial.

Use of the new selection procedure was authorized by the board of supervisors in February 1973. The board's order required the Alcorn County Circuit Clerk to submit a list of names for use in the new juror selection procedure to the board during March 1973 so that the board could comply with the duty imposed upon it by Miss.Code Ann. § 13–5–3 (1972) which requires the formulation of a new master list of jurors in April of each year.

Copeland's trial took place in July 1973. He had been represented by counsel concerning the incident which gave rise to the prosecution which resulted in his conviction since the fall of 1972. Copeland was indicted by the grand jury during the May 1973 term of court. Consequently, he was af-

forded a period of 2 to 3 months in which to ascertain the facts concerning the operation of the new juror selection procedure. *Morris v. Sullivan*, 497 F.2d 544 (5th Cir. 1974); *Wells v. Wainwright*, 488 F.2d 522 (5th Cir. 1973). Having foregone the opportunity to make such an investigation prior to trial, *Francis* precludes Copeland from raising the issue by collateral proceedings under § 2254.

An order will be entered dismissing the petition.